[Cite as *Foy v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-1065.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Raymond Foy,                                     :

      Plaintiff-Appellant,              :            No. 16AP-723
                                                (Ct. of Cl. No. 2014-00916)
v.                                               :            No. 16AP-724
                                                (Ct. of Cl. No. 2015-01008)
Ohio Department of Rehabilitation               :
And Correction,
                                                (ACCELERATED CALENDAR)
      Defendant-Appellee.              :

                                             :

D E C I S I O N

Rendered on March 23, 2017

**On brief:** *Raymond Foy*, pro se.

**On brief:** *Michael DeWine*, Attorney General, and *Timothy M. Miller*, for appellee.

APPEALS from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Raymond Foy, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("DRC"). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is an inmate at Toledo Correctional Institution ("TCI"). Appellant suffers from a condition known as bilateral corneal opacity, or cloudy vision, caused by scarring of a portion of the corneas in each of his eyes. On November 21, 2014, appellant filed a complaint against DRC in case No. 2014-00916, alleging that DRC failed to properly treat his condition by refusing to send him for a consultation with a corneal

specialist.  According to the complaint, DRC's optometrist, Thomas Jared Shoemaker, O.D., told appellant that there was nothing more that could be done at TCI to treat his condition.  Appellant alleges that around July 2013, Dr. Shoemaker submitted a consultation request for appellant to see a corneal specialist.  There is no dispute that DRC's collegial review committee, headed by DRC's medical director, Andrew D. Eddy, M.D., denied the request based on a determination that a consultation with a corneal specialist was not medically necessary.  Dr. Eddy subsequently denied another such request submitted by Dr. Shoemaker on July 11, 2014.  On June 22, 2015, appellant filed an amended complaint wherein he made the additional allegation that Dr. Eddy denied several other requests for a consultation with a corneal specialist submitted on appellant's behalf.

{¶ 3}   On December 8, 2015, appellant filed a complaint against DRC in case N0. 2015-01008, alleging that on August 9, 2014, Dr. Shoemaker submitted a consultation request for appellant to see a corneal specialist but that Dr. Eddy once again denied the request.  According to appellant's complaint, his eyesight is getting progressively worse as a result of DRC's failure to provide him with necessary medical treatment for his condition.  Appellant also alleges that on November 24, 2015, "nurse practitioner Cochran" and/or Dr. Sewell submitted similar requests on appellant's behalf but that Dr. Eddy had subsequently denied the requests.  (Compl. at 5.)  The complaint further alleges that Dr. Eddy "has chronologically negligently, recklessly failed to provide any care" for his medical condition.  (Compl. at 2.)

{¶ 4}   On October 16, 2015, DRC filed a motion for summary judgment in case No. 2014-00916 claiming that appellant had failed to comply with the court's order requiring the parties to identify any expert witness they intended to call at trial.  DRC argued that appellant will be unable to prevail at trial without the testimony of a medical expert.  DRC also produced the affidavits of Dr. Shoemaker and Dr. Eddy in support of the motion for summary judgment.[1]  On February 4, 2016, the Court of Claims denied the motion because DRC failed to produce evidence to support its assertion that appellant failed to

---

[1] In his affidavit, Dr. Shoemaker averred that he "recommended that [appellant] be scheduled to see a corneal specialist to confirm my opinion that [appellant's] potentially depressed visual acuity was unrelated to his corneal scarring."  (Oct. 15, 2015 Aff. at 2.)

identify an expert witness or provide DRC with an expert report. On February 18, 2016, DRC moved the Court of Claims to consolidate case No. 2014-00916 with case No. 2015-01008.

{¶ 5} On June 1, 2016, appellant filed a motion for summary judgment arguing that he was entitled to judgment in his favor because DRC admitted facts supporting his claim for relief by failing to timely respond to appellant's request for admissions. On June 7, 2016, DRC moved the Court of Claims for leave to withdraw its inadvertent admission pursuant to Civ.R. 36(B).[2] On June 27, 2016, appellant filed a motion in the Court of Claims seeking a determination that Dr. Eddy was not entitled to personal immunity under R.C. 2743.02 and 9.86 because he acted in a reckless manner when he determined that a consultation with a corneal specialist was not medically necessary.

{¶ 6} On August 12, 2016, DRC filed a second motion for summary judgment both as to the claims alleged by appellant and the personal immunity of Dr. Eddy. DRC supported the motion with the affidavit of Dr. Eddy. Dr. Eddy's affidavit provides, in relevant part, as follows:

> 2. I graduated from the Northeastern Ohio University College of Medicine in 1983 with a Doctor of Medicine. I have been * * * licensed as a medical doctor in the State of Ohio since July 11, 1984. I am board certified by the American Board of Internal Medicine.
>
> 3. I am employed by the Ohio Department of Rehabilitation and Correction (ODRC) as the State Medical Director. As part of my job duties, I [am] responsible for the overall supervision of inmate medical services including, but not limited to, the overall planning, design, implementation, monitoring, utilization management, and evaluation of medical services provided within ODRC.
>
> 4. Through my employment with ODRC, I have personal knowledge of ODRC rules, regulations, protocols, policies and procedures regarding inmate medical diagnosis, treatment and care, including, but not limited to, ODRC Policy No. 68-MED-01, ODRC Policy No. 68-Med-14 and ODRC Protocol B-1.

---

[2] On June 7, 2016, the Court of Claims consolidated case Nos. 2014-00916 and 2015-01008.

5. In my role as the State Medical Director for ODRC, I am charged with determining what constitutes medically necessary care and treatment for inmates in the state's custody. This includes determining, through the Collegial Review Process outlined in ODRC Policy No. 68-MED-01 and Medical Protocol B-1, whether it is medically necessary for an inmate to receive specialty services that are beyond the resources available at an institution. A request for an inmate to receive specialty services is generated by filling out a consultation request form.

* * *

13. In the scope and course of my duties, as part of the Collegial Review Process, I reviewed [appellant's] medical records and/or discussed [appellant's] condition with medical personnel as TOCI in order to determine whether it was medically necessary for [appellant] to see a corneal specialist. Again, [appellant's] medical records indicated that the corneal scarring on [appellant's] eyes had been stable for several years. Additionally, there was no indication whether the depression in [appellant's] visual acuity was legitimate or malingering. Therefore, based upon my training, education, and experience, I made a medically appropriate determination that any depression in [appellant's] visual acuity was unrelated to his corneal scarring because it had remained unchanged for several years. Accordingly, I determined that it was not medically necessary for [appellant] to see a corneal specialist.

* * *

15. If I had determined that it was medically necessary for [appellant] to see a corneal specialist, ODRC would have sent him to see a corneal specialist at no cost to [appellant].[3]

{¶ 7} DRC's motion for summary judgment is also supported by the affidavit of legal counsel, Assistant Attorney General Timothy M. Miller, who avers that "[a]t no point has [appellant] provided me with the names of any expert witnesses or any expert reports in regard to either Case Number 2014-00916 or Case Number 2015-01008." (Miller Aff. at 2.)

---

[3] Dr. Eddy offered the same opinion regarding each of the consultation requests referenced in appellant's complaints.

{¶ 8} In his affidavit in opposition to DRC's motion for summary judgment, appellant acknowledges that Dr. Eddy's "denial of a cornea[l] specialist * * * establish[es] the basis for the lawsuit," but he identifies his claim as one sounding in "[o]rdinary negligence." (Appellant's Aug. 19, 2016 Aff. at 3.) Appellant's primary argument in opposition to DRC's motion for summary judgment is that the opinions expressed in Dr. Eddy's affidavit conflict with facts deemed admitted by DRC when it failed to timely respond to appellant's Civ.R. 36 request for admissions. Appellant submits that the conflict creates a genuine issue of material fact.

{¶ 9} On October 7, 2016, the Court of Claims issued a decision granting DRC's motion for leave to withdraw admissions, denying appellant's motion for summary judgment, and granting DRC's motion for summary judgment. In its decision, the Court of Claims found that appellant's complaint stated a claim for relief against DRC sounding in medical negligence and that Dr. Eddy's affidavit satisfied DRC's burden of producing evidence that DRC met the applicable standard of care in the treatment of appellant's corneal opacity/scarring. Because appellant failed to produce the testimony of a competent medical expert to rebut Dr. Eddy's opinions, the Court of Claims concluded that there were no genuine issues of material fact as to appellant's medical claim and that DRC was entitled to judgment as a matter of law. The Court of Claims also determined that Dr. Eddy did not act in a reckless manner when he concluded that it was not medically necessary for appellant to see a corneal specialist and that Dr. Eddy was entitled to personal immunity as a matter of law.

{¶ 10} Appellant timely appealed to this court from the judgment of the Court of Claims.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellant assigns the following as trial court error:

> [1.] The court of claims decision should be reversed because if erroneously styled and analyzed Plaintiff claims as one of medical malpractice and Failed to rule on his ordinary negligence Claims.

> [2.] The court of claims decision should be reversed because defendant affidavits conflicts with its pre answers to complaint and response to Admission.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 12} Appellate review of summary judgments is de novo. *MacDonald v. Authentic Invests., LLC*, 10th Dist. No. 15AP-801, 2016-Ohio-4640, ¶ 22; *Titenok v. Wal-Mart Stores E., Inc.*, 10th Dist. No. 12AP-799, 2013-Ohio-2745, ¶ 6. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 13} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 14} In appellant's first assignment of error, appellant contends that the Court of Claims erred when it construed his claim for relief as a medical claim, rather than a claim sounding in ordinary negligence, and granted summary judgment for DRC. We disagree.

{¶ 15} The Court of Claims construed appellant's claim for relief as a "medical claim" as defined in R.C. 2305.113. R.C. 2305.113(E)(3) defines a "medical claim" in relevant part as "any claim that is asserted in any civil action against a physician, * * *

hospital, * * * or residential facility, * * * and that arises out of the medical diagnosis, care, or treatment of any person." "The term 'medical claim' as defined in R.C. 2305.113(E)(3) has two components that the statute states in the conjunctive: (1) the claim is asserted against one or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Estate of Stevic v. Bio-Med. Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, ¶ 18.

{¶ 16} In *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, the specific question raised by the appeal was whether a counterclaim alleged a claim for defamation or ordinary negligence. This court relied on the following guiding principle in making the determination: " ' " '[C]ourts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.' " ' " *Id.* at ¶ 28, quoting *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 13, quoting *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988), quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 17} In *Wilson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 91AP-36 (Apr. 9, 1991), an inmate filed an action against DRC alleging that DRC employees had prescribed clear eyeglasses for him when he was medically required to wear rose-tinted glasses. The Court of Claims granted summary judgment in favor of DRC. In affirming the judgment of the Court of Claims, this court held as follows:

> DRC provided medical testimony, through the affidavit of Dr. Duncan, which indicated that rose-tinted glasses were not medically necessary for appellant. There was no evidence in the record to the contrary. In order to prove medical negligence, appellant needed to provide medical testimony that Dr. Duncan, the physician who treated him at the prison, acted below the accepted standard of care. See *Bruni v. Tatsumi* (1976), 46 Ohio St. 2d 127. Appellant failed to do so and the trial court properly granted summary judgment in favor of DRC.

*Id.*

{¶ 18} Here, appellant acknowledges that Dr. Eddy's denial of his requests for a consultation with a corneal specialist forms the basis of his suit against DRC. Appellant's

amended complaint and the evidence presented by DRC establish that DRC policy requires it to provide specialized medical care to inmates if DRC determines that such care is medically necessary. Such a determination involves the exercise of professional skill and judgment by a physician. Thus, the only reasonable conclusion to be drawn from appellant's amended complaint and the evidence produced in connection with DRC's motion for summary judgment is that appellant's claim against DRC arises out of Dr. Eddy's medical diagnosis, care, or treatment of appellant.

{¶ 19} Appellant argues, however, that case law from this court holds that claims against DRC alleging negligent medical care, diagnosis, or treatment of an inmate are construed as ordinary negligence claims absent either an allegation in the complaint that DRC is a "hospital" for purposes of R.C. 2305.113 or proof by DRC that it is a "hospital." In support of his position, appellant relies on *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048 (10th Dist.) ("*Franks I*"), and *Foster v. Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-503, 2013-Ohio-912. We believe that appellant has misconstrued the holdings of these cases and that his reliance is misplaced.

{¶ 20} In *Franks I*, Jerry Franks, an inmate who suffered from obvious physical limitations, fell down a flight of stairs after a DRC nurse refused to provide him with a first floor restriction. The Court of Claims construed Franks' claim against DRC as a medical claim and granted DRC's motion for judgment on the pleadings because appellant failed to submit a Civ.R. 10(D)(2) affidavit of merit.[4] On appeal, this court reversed and remanded the case to the Court of Claims for further proceedings because "it was premature for the trial court to conclude that appellant has asserted a medical claim and grant judgment on such a claim." *Id.* at ¶ 10. This court also noted that "the pleadings shed no light on whether ODRC is one of the medical providers enumerated in R.C. 2305.113(E)." *Id.*

{¶ 21} On remand, the Court of Claims granted summary judgment for DRC because Franks failed to produce the testimony of a medical expert, by affidavit or otherwise, to support his medical claim. In *Franks v. Ohio Dept. of Rehab. & Corr.*, 10th

---

[4] Civ.R. 10(D)(2)(a) provides in relevant part: "Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim * * *, as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability."

Dist. No. 12AP-442, 2013-Ohio-1519 ("*Franks II*"), this court held that "the pleadings and evidence establish that appellant's claim is one for ordinary negligence on the part of prison medical staff, not ***medical malpractice***, and that the trial court erred in granting summary judgment for ODRC on this claim." (Emphasis sic.) *Id.* at ¶ 19. In so holding, this court noted that "claimed negligence in a medical context that does not rely upon a lapse in the professional skills and judgment of medical personnel, but relates to actionable conduct that would lie within the common knowledge of and experience of a layperson * * * sounds in ordinary negligence and does not invoke the specialized elements of a professional malpractice claim." *Id.* at ¶ 8, citing *Cunningham v. Children's Hosp.*, 10th Dist. No. 05AP-69, 2005-Ohio-4284, ¶ 1, and *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 506 (1964).

{¶ 22} In *Foster*, inmate Foster claimed that he sustained an injury when he fell from his bunk after DRC employees forced him into a top bunk even though he had informed them that sleeping on that bunk was contrary to medical advice given him for his various health problems. In connection with its motion for summary judgment, DRC produced evidence that DRC's employee, Dr. Asche, had previously issued Foster a temporary lower bunk restriction but refused to reissue the restriction on its expiration. The Court of Claims construed Foster's claim as a medical claim and granted summary judgment to DRC because Foster failed to produce the affidavit of a medical expert in support of his claim. This court determined that Foster's complaint stated a claim for relief in ordinary negligence, rather than medical malpractice, and reversed the judgment of the Court of Claims. In so holding, this court reasoned as follows:

> DRC failed to provide evidence, through affidavit or otherwise, that Dr. Asche had provided appellant with medical diagnosis, care, or treatment. Rather, ODRC's affidavit established only that Dr. Asche had (1) issued a short-term lower-bunk restriction that had lapsed, (2) had re-evaluated appellant at the time the restriction expired, and (3) had refused to renew the lower-bunk restriction. Where a medical examination is conducted as a precondition to obtaining a benefit or to obtain information concerning a person's eligibility for a benefit, that examination is distinguishable from one occurring in the diagnosis, care or treatment of a person, as requisite to a medical claim.

(Citations omitted.)  *Id.* at ¶ 34.

{¶ 23} In our view, this court's prior decisions in *Franks I*, *Franks II*, and *Foster* stand for the proposition that an inmate's claim against DRC based on the negligent acts or omissions of DRC's medical staff sound in ordinary negligence, rather than medical malpractice, where the claimed negligence occurs in a medical context but does not arise in the course of medical diagnosis, care, or treatment of the inmate.  Here, appellant's claim against DRC is a "medical claim" because, unlike the cases cited by appellant, the pleadings and the evidence establish that appellant's injuries arise out of the alleged negligence of Dr. Eddy in the medical diagnosis, care, or treatment of appellant's corneal opacity/scarring.  *Wilson.*  Because a "physician" is one of the medical providers identified in R.C. 2305.113(E) and because DRC's liability to appellant, if any, arises out of the alleged negligence of Dr. Eddy in his medical diagnosis, care, or treatment of appellant, appellant's claim against DRC is a medical claim regardless of whether DRC is a "hospital" or not.[5]  *See, e.g.*, *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 78 (this court treated a wrongful death claim against DRC as a medical claim where the complaint alleged that the negligence of DRC's medical staff caused the inmate's death by failing to obtain adequate information about her medical condition before accepting her as a transfer patient, failing to monitor her blood serum potassium level and cardiac condition, and failing to transport her for dialysis); *Jackson v. Northeast Pre-Release Ctr.*, 10th Dist. No. 09AP-457, 2010-Ohio-1022, ¶ 17 (under R.C. 2305.113, an inmate's allegation that DRC's medical staff misdiagnosed her ankle fracture as an ankle sprain "clearly falls within the definition of a 'medical claim' "); *Schooley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-823, 2006-Ohio-2072 (inmate's complaint alleging DRC's medical staff provided inadequate postoperative care sounded in medical negligence); *Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 399 (10th Dist.1989) (inmate's claim against DRC sounds in medical malpractice where the inmate alleged an injury caused by DRC's failure to adequately treat his hypertension and to adequately

_____

[5] Appellant could not have made Dr. Eddy a defendant in this action because "[t]he only defendant in original actions in the court of claims is the state." R.C. 2743.02(E).  Pursuant to R.C. 2743.02(F), "[a] civil action against [a state] employee * * * that alleges that the * * * employee acted * * * in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

diagnose and treat his back problem, hemorrhoids, and swollen elbow). Contrary to appellant's assertion, this court's decision in *Franks I*, *Franks II*, and *Foster* do not support his contention that his claim sounds in ordinary negligence. Accordingly, we hold that the Court of Claims did not err when it construed appellant's claim as a medical claim under R.C. 2305.113(E).

{¶ 24} "To succeed on a medical malpractice claim, the plaintiff must establish: (1) the standard of care within the medical community; (2) the defendant's breach of that standard of care; and (3) proximate cause between the breach and the plaintiff's injuries." *Gordon* at ¶ 66, citing *Adams v. Kurz*, 10th Dist. No. 09AP-1081, 2010-Ohio-2776, ¶ 11. In *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 129-30 (1976), the Supreme Court of Ohio articulated the following legal standard Ohio courts are to apply in evaluating whether a physician or surgeon has breached the applicable standard of care:

> In evaluating the conduct of a physician and surgeon charged with malpractice, the test is whether the physician, in the performance of his service, either did some particular thing or things that physicians and surgeons, in that medical community, of ordinary skill, care and diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances. He is required to exercise the average degree of skill, care and diligence exercised by members of the same medical specialty community in similar situations.

*Id.* at 129-30.

{¶ 25} "The *Bruni* standard applies to an inmate's claim for medical malpractice." *Gordon* at ¶ 67, citing *Sloan v. Ohio Dept. of Rehab. & Corr.*, 119 Ohio App.3d 331, 334 (10th Dist.1997), citing *Buerger*. In *Gordon*, this court stated that in a medical malpractice case, a plaintiff bears the burden of presenting sufficient evidence to allow the factfinder to conclude that the defendant breached the standard of care. *Id* at ¶ 77. This court also "recognized that 'whether the defendant has employed the requisite care must be determined from the testimony of experts' and that a medical malpractice trial may produce a 'battle of the experts.' " *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. No. 12AP-374, 2013-Ohio-1205, ¶ 51, quoting *Gordon* at ¶ 77. Similarly, "[u]nless a

matter is within the comprehension of a layperson, expert testimony is necessary." *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 102 (1992). "Experts have the knowledge, training and experience to enlighten the jury concerning the facts and their opinion regarding the facts." *Id.*, citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77 (1967).

{¶ 26} There is no dispute that appellant failed to either identify an expert witness who would give testimony in support of his medical claim or provide DRC with an expert report as required by the Court of Claims' pre-trial orders and L.C.C.R. 7(E). There is also no dispute that appellant failed to provide the testimony of a medical expert, by affidavit or otherwise, in opposition to DRC's motion for summary judgment. Thus, appellant produced no evidence to rebut Dr. Eddy's affidavit testimony wherein he averred as follows:

> [B]ased upon my training, education, and experience, I made a medically appropriate determination that any depression in [appellant's] visual acuity was unrelated to his corneal scarring because it had remained unchanged for several years. Accordingly, I determined that it was not medically necessary for [appellant] to see a corneal specialist.

(Aff. at 3.)

{¶ 27} Appellant contends that the Court of Claims should have disregarded Dr. Eddy's affidavit inasmuch as his testimony is based on his review of documents in appellant's medical file and not his own personal knowledge. Dr. Eddy's affidavit establishes that as DRC's Medical Director, he has access to appellant's inmate medical file and that he personally reviewed appellant's medical records in reaching his conclusion that a consultation with a corneal specialist was not medically necessary in appellant's case. Thus, Dr. Eddy had personal knowledge of the facts underlying his testimony. Moreover, Dr. Eddy's affidavit provides sufficient information to establish his expertise as a medical doctor. Under Ohio law, any doctor licensed to practice medicine is competent to testify on medical issues. *Schooley* at ¶ 19. Evid.R. 705 permits an expert witness to offer opinion testimony based on the witness's own personal knowledge or on facts shown by other evidence. *State v. Chapin*, 67 Ohio St.2d 437 (1981). Thus, the Court of Claims did not err when it considered Dr. Eddy's affidavit.

{¶ 28} Though appellant is competent to testify that he believes his eyesight is worsening, appellant is not competent to offer an opinion that his worsening eyesight is caused by his corneal opacity/scarring. Nor is appellant competent to determine whether a consultation with a corneal specialist is a medically necessary treatment for his condition. The only competent evidence on these critical issues is the affidavit of Dr. Eddy. Absent the testimony of a medical expert, appellant cannot possibly prove either that DRC breached the standard of care by failing to permit a consultation with a corneal specialist or that an alleged breach of the standard of care by Dr. Eddy caused his eyesight to worsen. Consequently, there are no genuine issues of material fact and DRC is entitled to judgment as a matter of law.

{¶ 29} For the foregoing reasons, appellant's first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 30} In appellant's second assignment of error, appellant contends that the Court of Claims erred when it granted summary judgment to DRC because the averments in Dr. Eddy's affidavit conflict with admissions made by DRC in its answer to appellant's amended complaint, as well as an admission made by DRC in responding to his request for admissions. DRC contends that appellant waived the arguments made in his second assignment of error by failing to raise it in opposition to DRC's motion for summary judgment. We agree.

{¶ 31} "A court of appeals must resolve an appeal 'on its merits on the assignments of error set forth in the briefs under App.R. 16.' " *State v. Armor*, 10th Dist. No. 16AP-532, 2017-Ohio-396, ¶ 26, quoting App.R. 12(A)(1)(b). As such, appellate courts generally do not address arguments unrelated to resolving the assignment of error. *Hetrick v. Dept. of Agriculture*, 10th Dist. No. 15AP-944, 2017-Ohio-303, ¶ 19; *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21. Thus, to the extent that appellant argues that the Court of Claims erred in granting DRC's motion to withdraw admissions arising from its failure to timely respond to discovery, his assignment of error does not preserve that argument for review. Accordingly, we decline to address this argument. *Parker v. Elsass*, 10th Dist. No. 01AP-1306, 2002-Ohio-3340, ¶ 14, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997).

{¶ 32} Moreover, "[a] party may not change its theory of the case and present new arguments for the first time on appeal." *Clifton Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-709, 2013-Ohio-2742, ¶ 13. *See also Freedom Mtge. Corp. v. Groom*, 10th Dist. No. 08AP-761, 2009-Ohio-4482, ¶ 27. In opposition to DRC's motion for summary judgment, appellant argued that DRC admitted certain facts by failing to timely respond to his request for admissions. Appellant, however, never argued that Dr. Eddy's affidavit conflicted with DRC's subsequent responses to his request for admissions. Nor did appellant argue that DRC's answer admitted material facts alleged in his complaint. Accordingly, appellant waived these arguments for purposes of appeal, even if they were preserved. *Id.*

{¶ 33} For the foregoing reasons, appellant's second assignment of error is overruled. Having overruled appellant's two assignments of error, we hold that the Court of Claims did not err when it granted summary judgment in favor of DRC.

## V. CONCLUSION

{¶ 34} Having overruled appellant's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____