[Cite as *Skaggs v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-2034.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Jason Skaggs,                                          :

     Plaintiff-Appellant,                      :

                                                    No. 21AP-465

v.                                                           :        (Ct. of Cl. No. 2019-00650JD)

Ohio Department of Rehabilitation            :        (ACCELERATED CALENDAR)
and Correction,
                                                               :
     Defendant-Appellee.
                                                               :

D E C I S I O N

Rendered on June 16, 2022

**On brief**: *Jason Skaggs*, pro se.

**On brief**: *Dave Yost*, Attorney General, *Jenna Jacobus*, and *Chelsey M. Capezzuti*, for appellee.

APPEAL from the Court of Claims of Ohio

McGRATH, J.

{¶ 1} This is an appeal by plaintiff-appellant, Jason Skaggs, from a judgment of the Court of Claims of Ohio overruling his objections to a magistrate's decision and entering judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), on appellant's action against ODRC. For the reasons that follow, we affirm.

{¶ 2} Appellant, currently an inmate in the custody of ODRC, appears to suffer from a seizure disorder. On May 23, 2019, appellant filed a pro se complaint against ODRC alleging that he has been an inmate since 2008, housed in three different institutions over that period of time. The complaint alleged appellant has suffered seizures from the age of

16, and that he had been treated and prescribed various medications to control his condition.

{¶ 3} According to the complaint, beginning "about 6/25/2016," the London Correctional Institution "for no apparent reason has taken the plaintiff off his prescribe[d] and **mandatory medication** * * * to control" his condition, and during this time he has been placed on "mind [altering] psychotic drugs" of Phelbatol and Depakote "to help keep in check the attacks of unmanageable seizures." (Emphasis sic.) (Compl. at 1 & Attachment to Compl. at 3.) The complaint also alleged that appellant's wrists had been injured due to "excessive force" in being handcuffed. (Attachment to Compl. at 4.)

{¶ 4} On June 26, 2019, ODRC filed a motion to dismiss pursuant to Civ.R. 12(B)(6). In the accompanying memorandum in support, ODRC argued appellant's claim that he was wrongly denied medication was barred by the applicable one-year statute of limitations "for events dating back to 2016." (Mot. to Dismiss at 2.) By entry filed December 19, 2019, the Court of Claims denied ODRC's motion to dismiss.

{¶ 5} On December 27, 2019, appellant filed a motion to amend his complaint, pursuant to Civ.R. 15, which the Court of Claims granted by order filed February 4, 2020. On February 18, 2020, appellant filed an amended complaint. ODRC filed an answer to the amended complaint on March 24, 2020.

{¶ 6} On March 4, 2021, the matter came for trial before a magistrate of the Court of Claims. On May 26, 2021, the magistrate filed a decision recommending that judgment be entered in favor of ODRC.

{¶ 7} While the record on appeal does not include a trial transcript, the decision of the magistrate sets forth the following factual findings and conclusions of law. At trial, appellant testified that, "prior to entering prison in 2008, he was placed on seizure medication in 2003 and has continued to take seizure medication since that time." Appellant related "he suffers from grand mal seizures, complex partial seizures, and stare seizures." According to appellant, "when he has a seizure, he often loses control of his bodily movements and * * * he is unable to recall events that occurred while * * * suffering from his seizure." Appellant "stated that with the aid of his medications, Topamax and Keppra, his seizures have been controlled." (Mag. Decision at 1.)

{¶ 8} Appellant related "he was transferred to the London Correctional Institution in January 2016 and began to have problems with seizures shortly thereafter." He testified

that "at some point [ODRC's] medical staff discontinued his seizure medication." The decision by the institution to remove him from Topamax "occurred on February 5, 2016," and the decision to remove him "from Keppra occurred on February 9, 2016." (Mag. Decision at 1 citing Pl.'s Ex. 1.) Appellant "was gradually [weaned] off both medications over the next couple of months." (Mag. Decision at 1-2.)

{¶ 9} Appellant testified he "began to experience frequent seizures that were witnessed by staff and other prison employees." He "believes * * * the medications should never have been discontinued and that by removing him from his medications, he began to have frequent seizures." According to appellant, "it appeared to him that [ODRC] did not believe that his seizures were real." (Mag. Decision at 2.)

{¶ 10} Appellant "described several incidents where he received conduct reports for his actions while he was having a seizure," and "emphasized * * * he has no ability to control his actions when he is having a seizure." Appellant testified that he suffered a seizure on April 27, 2016, "and he was unable to respond to corrections officer's orders, unable to control himself, became aggressive, and grabbed the arm of the corrections officer." In a second incident occurring on July 3, 2016, a corrections officer "was escorting [appellant] when [he] became 'dead weight' and was taken to the floor." In a third incident, occurring on July 28, 2016, two corrections officers "found [appellant] lying down and shaking." At "some point," appellant attempted to "grab" one of the officers "by the right arm." The corrections officers then "grabbed [appellant] by the shoulders, placed him on the wall, attempted to place handcuffs on him, and ordered him to comply." When appellant "failed to comply, corrections officers deployed pepper spray." Appellant "continued to become more aggressive until officers gained control of him." As a result, appellant was "placed in the hole (restrictive housing) with handcuffs on that [appellant] says were too tight." Appellant "testified that his wrists were damaged by the handcuffs." (Mag. Decision at 2.)

{¶ 11} Appellant testified that "in October 2016, his diagnosis was confirmed and [ODRC] prescribed Depakote and Keppra." Appellant "believes he should have been prescribed Topamax." Appellant "acknowledged that he was never denied seizure medication and was continually provided medications." He "believes," however, "he should have never had Topamax and Keppra removed from his prescription plan." Appellant further testified that "Disability Rights Ohio became involved in his case and his conduct reports were amended to show that he was not breaking prison rules but that he was

suffering from medical issues." Appellant "added that he is currently on Keppra and Topamax." (Mag. Decision at 2-3.)

{¶ 12} The other witness at trial, "Landon Khols, the health care administrator at the Allen-Oakwood Correctional Institution, testified that [appellant] is on the healthcare load for [ODRC]." Khols "examined a list of prescription medi[c]ations that [appellant] has been prescribed since 2017 and noted that dating back to March 2017 [appellant] has been consistently provided with various combinations of seizure medications, including Divalproex (Depakote), Levetiracetam (Keppra) and Carbamazepine." (Mag. Decision at 3.)

{¶ 13} With respect to appellant's claim for "excessive force," the magistrate noted that appellant "claims injuries arising from at least one of the 2016-incidents, in which force was used on him while he was suffering from a seizure" and during which, according to appellant, "his wrists were damaged because the handcuffs were too tight." The magistrate determined that, because appellant "did not file this action until May 23, 2019," the two-year statute of limitations under R.C. 2743.16(A) "bars any recovery arising out of the force that was used on him." (Mag. Decision at 3.)

{¶ 14} The magistrate next addressed ODRC's argument that appellant's "medical negligence claims are barred by the one-year statute of limitations for such claims" under R.C. 2305.113(A). The magistrate observed that appellant "challenges the February 2016 decision of the medical staff to adjust his seizure medication," and noted appellant "believes that Topamax and Keppra should have always been his prescription medication and that it was a mistake to alter his medications." The magistrate determined, however, appellant "filed this action on May 23, 2019, well beyond the time limitation for bringing such actions" and that, "[e]ven applying the two-year statute of limitations in R.C. 2743.16(A), [appellant's] claim would likewise be time-barred." (Mag. Decision at 3, 4.)

{¶ 15} Finally, the magistrate observed, "even if [appellant] had timely filed his claim challenging the decision to adjust his seizure medication, [he] did not present any expert testimony to support such a claim. The negligence [appellant] describes arose in the course of medical diagnosis, care, or treatment, and is thus a claim for medical malpractice." Finding that appellant "failed to present any expert witness testimony to establish the standard of care or that a breach of that standard proximately caused him harm," the magistrate concluded appellant "cannot prevail on his claim for medical

malpractice." (Mag. Decision at 4-5, 6.)  Based on the above determinations, the magistrate therefore recommended that judgment be entered in favor of ODRC.

{¶ 16} On June 10, 2021, appellant filed a "motion to deny this Magistrate decision to deny the plaintiff complaint," which the Court of Claims construed as objections to the magistrate's decision.  In his motion, appellant asserted he "never * * * submitted a Claim for 'Medical Malpractice,' " and that "if the Court would read the Complaint actually as written it will determine this was [a] negl[i]gent tort action."  (June 10, 2021 Mot. at 1.)

{¶ 17} On August 18, 2021, the Court of Claims filed a judgment entry adopting the magistrate's decision as its own and entering judgment in favor of ODRC.  The Court of Claims, noting that appellant did not provide a transcript of the trial evidence to support his objections (nor an affidavit of evidence), restricted its consideration of the objections to "a review of the magistrate's legal conclusions."  (Aug. 18, 2021 Jgmt. Entry at 2.)  In its entry, the Court of Claims held in relevant part:

> A review of the magistrate's legal conclusions reveals that he neither erred in construing Plaintiff's claim as one for medical malpractice nor finding that Plaintiff's claim was barred by the statute of limitations.  Indeed, if ODRC's alleged negligent acts or omissions arise in the course of medical diagnosis, care, or treatment of an inmate, then it is a claim for medical malpractice. * * * The negligence Plaintiff alleges involves Defendant's medical staff altering Plaintiff's seizure medications, Topamax and Keppra, in February 2016.  Indeed, such actions arise out of Defendant's medical diagnosis, care, or treatment of Plaintiff.  Thus, the Court finds no error with the magistrate construing Plaintiff's allegations as a claim for medical malpractice.
>
> Additionally, Plaintiff was aware Defendant's medical staff altered his seizure medication in February 2016 and Plaintiff believes he should have always been prescribed Topamax and Keppra.  Indeed, this is a cognizable event that should reasonably alert Plaintiff to pursue his remedies regarding an error in his medical care. * * * Despite Plaintiff's contention that Defendant's negligence was ongoing until 2020, it is clear that Plaintiff believes Defendant began mishandling his medical treatment in 2016.  Thus, the Court finds no error with the magistrate's legal finding that Plaintiff's medical malpractice claim is time-barred.
>
> Assuming *arguendo* that the Court were to construe Plaintiff's claim as ordinary negligence, his claim would likewise be

barred by the two-year statute of limitations. * * * As stated above, Plaintiff claims Defendant's discontinuation of Plaintiff's seizure medication, which led to several use-of-force incidents, occurred in 2016. Consequently, Plaintiff's May 2019 complaint cannot survive the statute of limitations.

(Jgmt. Entry at 5-6.)

{¶ 18} While appellant's pro se brief contains a section titled "ASSIGNMENT OF ERROR[]," his brief does not set forth a statement of assignments of error as required by App.R. 16(A)(3). However, appellant asserts in his brief that the Court of Claims erred "by accepting that [ODRC] produce the expert witness called at the trial." According to appellant, "the State through [its] agents at trial * * * called Landon Khols," and the Court of Claims "then * * * construed that [appellant] called this witness." Appellant argues that he "never raised a malpractice claim," and that the Court of Claims "abused [its] discretion by not accepting [his] claim * * * [as] other than a Tort/Negligence claim." (Appellant's Brief at 4.)

{¶ 19} Appellant further argues that, upon entering the custody of ODRC, he was taking "the correct medication that was prescribed to him," and that ODRC had a "mandatory duty * * * not to experiment with other medications." Appellant maintains ODRC and its agents "prescribed various combination[s]" of medications that only increased his seizures and failed to "control his seizure activity." According to appellant, his seizure activity only decreased once he was "given back * * * his original prescribed medication of Topamax and Keppra." (Emphasis sic.) (Appellant's Brief at 4, 7.)

{¶ 20} As noted by the Court of Claims in its decision addressing appellant's objections, appellant "did not provide a transcript of the evidence to support his objections or an affidavit of evidence." (Jgmt. Entry at 2.) Civ.R. 53(D)(3)(b)(i) states in part that "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." Civ.R. 53(D)(3)(b)(iii) states in part: "An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available."

{¶ 21} In the absence of a transcript or affidavit, a trial court is "required to accept the magistrate's findings of fact" and can "only examine the legal conclusions drawn from those facts." *Sanders v. Wamco, Inc.*, 10th Dist. No. 10AP-548, 2011-Ohio-1336, ¶ 9, citing

*Harris v. Mapp*, 10th Dist. No. 05AP-1347, 2006-Ohio-5515, ¶ 7. *See also Compton v. Bontrager*, 10th Dist. No. 03AP-1169, 2004-Ohio-3695, ¶ 6 ("Where the required support for a party's objections is not provided, a trial court is required to accept the magistrate's findings of facts, and can examine only the legal conclusions based on those facts."). In such circumstances, this court's "review of appellant's assignments of error is limited to whether the trial court abused its discretion in applying the law to the magistrate's findings of facts." *Id.*, citing *H.L.S. Bonding Co. v. Fox*, 10th Dist. No. 03AP-150, 2004-Ohio-547.

{¶ 22} At the outset, we note the focus of appellant's argument on appeal involves his contention that he suffered "injuries * * * from the wrong combination of medications that the State and through its agent [ODRC] prescribed over <u>many</u> years." (Emphasis sic.) (Appellant's Brief at 5.) Related to this argument is appellant's contention that the Court of Claims erred in treating such claim (i.e., arising from the decision by ODRC to make changes to his prescription medications) as sounding in medical malpractice as opposed to ordinary negligence.

{¶ 23} We first address, however, appellant's claim of injury arising from alleged use of "excessive force." The Court of Claims, in addressing appellant's objections to the magistrate's decision, held in part that, even construing appellant's claim as ordinary negligence, the evidence as to use-of-force incidents "occurred in 2016," and therefore could not survive the statute of limitations. (Jgmt. Entry at 6.)

{¶ 24} In addressing the evidence presented regarding appellant's excessive force claim, the decision of the magistrate cites testimony by appellant describing "several incidents" in 2016 (i.e., incidents occurring on April 27, July 3, and July 28, 2016) in which he "received conduct reports for his actions while he was having a seizure." The magistrate noted appellant asserted "injuries arising from at least one of the 2016-incidents" (i.e., the third incident on July 28, 2016), "in which force was used on him while he was suffering from a seizure" and during which, according to appellant, "his wrists were damaged because the handcuffs were too tight." (Mag. Decision at 2, 3.)

{¶ 25} Accepting that appellant's claim of excessive force sounds in ordinary negligence, R.C. 2743.16 sets forth the applicable statute of limitations and states in part: "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private

parties."   In general, " ' "a cause of action accrues at the time the wrongful action is committed." ' "  *McDougald v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-218, 2020-Ohio-6697, ¶ 8, quoting *Union Sav. Bank v. Lawyers Title Ins. Co.,* 191 Ohio App.3d 540, 2010-Ohio-6396, ¶ 25 (10th Dist.), quoting *Harris v. Liston*, 86 Ohio St.3d 203, 205 (1999).

{¶ 26} In the present case, the magistrate, who heard testimony by appellant asserting injury arising from an incident occurring in 2016, accordingly found the general time period of 2016 as the accrual date for the cause of action.  We find no error in the magistrate's determination (as adopted by the Court of Claims) that the cause of action for such claim accrued at the time of the incident.  Thus, under R.C. 2743.16, appellant "had two years after the accrual of the cause of action to file a civil action against the state." *Rankin v. Ohio Reformatory for Women*, 10th Dist. No. 09AP-524, 2009-Ohio-6575, ¶ 17. Because appellant filed his pro se complaint on May 23, 2019, his claim for excessive force based on an alleged 2016 incident cannot survive the applicable statute of limitations. Accordingly, the Court of Claims did not err in applying the law to the facts and determining the claim was time-barred.

{¶ 27} We now turn to appellant's primary argument on appeal in which, as indicated above, he contends the Court of Claims erred in granting judgment in favor of ODRC regarding his claim of injury arising from "the wrong combination of medications" that ODRC "prescribed over <u>many</u> years."  (Emphasis sic.)  On this issue, we initially address appellant's contention that he "never raised" or "mention[ed]" a "malpractice claim," and that his action was a "[t]ort/[n]egligence" claim. (Appellant's Brief at 5, 4.)

{¶ 28} As set forth under the facts, the magistrate construed the negligence described by appellant as a claim for medical malpractice, and the Court of Claims found no error with that determination.  Pursuant to R.C. 2305.113(A), "an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued."  In general, in the context of a medical malpractice claim, the statute of limitations begins to run when "a cognizable event puts the patient on notice that malpractice may have caused him or her to suffer injury." *Garcia v. Parenteau,* 3d Dist. No. 5-17-13, 2017-Ohio-8519, ¶ 9. *See also George v. Univ. of Toledo Med. Ctr.*, 10th Dist. No. 17AP-599, 2018-Ohio-719, ¶ 13 ("In determining when a patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, courts look to the occurrence of a

'cognizable event' as the trigger for the commencement of the statute of limitations."). "A 'cognizable event' is defined as 'some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.' " *Hans v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 07AP-10, 2007-Ohio-3294, ¶ 10, quoting *Allenius v. Thomas*, 42 Ohio St.3d 131, 134 (1989). Accordingly, "if a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff to the necessity for investigation and pursuit of her remedies." *Id.*

{¶ 29} Under Ohio statutory law, a "medical claim" is defined in part as " 'any claim that is asserted in any civil action against a physician, * * * hospital, * * * or residential facility, * * * and that arises out of the medical diagnosis, care, or treatment of any person.' " *Foy v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 16AP-723, 2017-Ohio-1065, ¶ 15, quoting R.C. 2305.113(E)(3). In considering the term "medical claim," courts have determined that R.C. 2305.113(E)(3) requires two components which must be read together: "(1) the claim is asserted against one or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Id.*, quoting *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, ¶ 18.

{¶ 30} In considering the applicable limitations period, " ' "courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial." ' " *Montgomery v. Ohio State Univ.*, 10th Dist. No. 11AP-1024, 2012-Ohio-5489, ¶ 13, quoting *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988), quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 31} Based on the testimony and evidence presented by appellant at trial, the magistrate determined that the decision to wean appellant off his then current seizure medication occurred on February 5, 2016 (Topamax) and February 9, 2016 (Keppra). (Mag. Decision at 1.) In the absence of a transcript, we accept the factual findings of the magistrate that the decision to change appellant's medications occurred in February 2016.

{¶ 32} In addressing appellant's objections to the magistrate's decision, the Court of Claims held that the negligence alleged by appellant "involves [ODRC's] medical staff altering [appellant's] seizure medications, Topamax and Keppra, in February 2016," and

that "such actions arise out of [ODRC's] medical diagnosis, care, or treatment of [appellant]." (Jgmt. Entry at 5.) We agree.

{¶ 33} Here, based on the record presented, the alleged negligent acts involve ODRC's medical staff changing appellant's seizure medications (involving the corresponding issues of whether he suffered from a seizure disorder and the proper course of medication to treat such a condition). Such actions, which implicate the standard of care for treating a seizure disorder, arise out of the medical diagnosis, care, or treatment of appellant. Accordingly, the Court of Claims did not err in finding appellant presented a claim for medical malpractice. *See Evans v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 16AP-767, 2018-Ohio-1035, ¶ 2, 35 (action by inmate claiming ODRC "negligently prescribed" medication, and "negligently changed his medication," presented a claim for medical malpractice); *Gibson v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 19AP-379, 2019-Ohio-4955, ¶ 18 (holding that appellant's claims "sound in medical negligence rather than ordinary negligence" as "[m]edical skill and judgment was necessary to determine the proper course of treatment * * * and [to] determine whether any medication should have been prescribed to him").

{¶ 34} Having found the claim at issue involved medical malpractice, the magistrate and Court of Claims further determined the action was barred under the applicable statute of limitations. Again, we find no error with that determination.

{¶ 35} As noted, the magistrate found, based on evidence presented by appellant, that the decision by ODRC to remove him from Topamax occurred on February 5, 2016, and the decision to remove him from Keppra occurred on February 9, 2016. Further, appellant testified "the medications should never have been discontinued and that by removing him from his medications, he began to have frequent seizures" (including three incidents in 2016, occurring on April 27, July 3, and July 28, 2016). (Mag. Decision at 2.) In addressing appellant's objection to the magistrate's decision, the Court of Claims noted appellant was "aware" that ODRC's medical staff "altered his seizure medication in February 2016," and that appellant "believes he should have always been prescribed Topamax and Keppra." (Jgmt. Entry at 5.) Here, as recognized by the Court of Claims, the "cognizable event" that should have alerted appellant to pursue remedies regarding an error in his medical care occurred in February 2016 when ODRC's medical staff began adjusting his seizure medication. *See Hans* at ¶ 10. Because the claim accrued in 2016, and appellant

did not file his complaint until May 23, 2019, the Court of Claims did not err in determining the medical malpractice claim was barred by the applicable statute of limitations (i.e., the one-year statute of limitations under R.C. 2305.113(A)).

{¶ 36} We note the Court of Claims alternatively concluded, even construing appellant's claim "as ordinary negligence," that such claim "would likewise be barred by the two-year statute of limitations." (Jgmt. Entry at 6.) Based on the record presented, we would also find no error with that determination.

{¶ 37} Finally, we briefly address appellant's contention that the Court of Claims erred "by accepting that [ODRC] produce the expert witness called at the trial," and his further assertion that "the State through [its] agents at trial * * * called Landon Khols, [and] then the court construed that [appellant] called this witness." (Appellant's Brief at 4.)

{¶ 38} A review of the limited record on appeal does not support any contention the magistrate "construed" that appellant called ODRC witness (i.e., Khols) as his own expert witness. Further, in context, while the magistrate found appellant's claim as barred by the applicable statute of limitations, the magistrate alternatively observed that, "even if plaintiff had timely filed his claim challenging the decision to adjust his seizure medication, plaintiff did not present any expert testimony to support such a claim." (Mag. Decision at 4-5.) In this respect, the magistrate cited Ohio case law for the proposition that, "in order to prove a claim for medical malpractice, '[e]xpert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard.' " (Mag. Decision at 5, quoting *Reeves v. Healy*, 192 Ohio App.3d 769, 2011-Ohio-1487, ¶ 38 (10th Dist.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130-31 (1976).)

{¶ 39} To the extent the magistrate recognized that expert testimony was required to prove a medical negligence claim based on the allegations and testimony presented, appellant cannot show error. *See, e.g.*, *Monroe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 89AP-842 (Feb. 27, 1990) (noting expert medical testimony was "essential to a finding of medical malpractice" in case in which plaintiff sought to establish that "defendant's treatment of plaintiff's seizure disorder fell below the accepted standard of care"). Thus, while the magistrate's discussion of the requirement of expert testimony in a medical malpractice action was not dispositive of the statute of limitations issue, appellant has not demonstrated error with respect to the magistrate's analysis regarding that issue.

{¶ 40} For the reasons stated above, we conclude the Court of Claims properly applied the law to the facts in overruling appellant's objections and in finding that his claims were barred under the applicable statutes of limitations.

{¶ 41} Based on the foregoing, appellant's sole assignment of error is overruled, and the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., and DORRIAN, J., concur.

_____