[Cite as *Brown v. Dept. of Rehab. & Corr.*, 2014-Ohio-1810.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Carlandus Brown, :

      Plaintiff-Appellant, :

            No. 13AP-804

v. : (Ct. of Cl. No. 2012-03115)

Department of Rehabilitation : (REGULAR CALENDAR)
and Correction,

              :

      Defendant-Appellee. :

              :

---

D E C I S I O N

Rendered on April 29, 2014

---

*Swope and Swope*, and *Richard F. Swope*, for appellant.

*Michael DeWine*, Attorney General, *Frank S. Carson* and *Emily Simmons*, for appellee.

---

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiff-appellant, Carlandus Brown, appeals a judgment of the Court of Claims of Ohio in favor of defendant-appellee, the Department of Rehabilitation and Correction ("DRC"). For the following reasons, we affirm.

{¶ 2} Brown is an inmate at the Warren Correctional Institution. On April 3, 2012, Brown filed a complaint against DRC alleging that, on July 7, 2011, Correctional Officer Michael Evans used excessive force against him. The case proceeded to trial before a magistrate on the issues of liability and whether Evans was entitled immunity under R.C. 9.86 and 2743.02(F).

{¶ 3}   At trial, Brown testified that he had a job in food service working the "B shift."  Inmates assigned to the B shift start work in the afternoon, while inmates assigned to the A shift start work during the morning.  According to Brown, around 6:00 or 6:30 a.m. on July 7, 2011, Evans entered his cell and told him to report to work.  Brown replied that there was a mistake; that he was "not the Brown" that Evans was looking for.  (Tr. 17.)  Another man, Damian Brown, who was incarcerated in the same unit as Brown, had a job in food service and worked the A shift.[1]  Brown testified that Evans had previously mixed up the two Browns and erroneously directed him, rather than Damian Brown, to report to work.  Brown claimed that a correctional officer had reprimanded him for reporting to work on the wrong shift.  The correctional officer threatened to send Brown to segregation and issue a report if he did it again.  With that warning in mind, Brown suggested that Evans call the correctional officer on duty at food service to verify which Brown was to report to work.

{¶ 4}   Evans rejected Brown's protest that a mistake had occurred, saying, "[N]o, they're calling for you."  (Tr. 17.)  Brown then left his upper-bunk bed and went to the laundry to get his work clothes.  After seeing that his clothes were still wet, he approached Evans at the correctional officers' desk and repeated his assertion that there was a mistake.  Brown again suggested that Evans call food service and ask whether he or Damian Brown should be reporting to work.  When Evans ignored him, Brown returned to his cell, turned off the overhead light, and climbed back into bed.  Evans then entered Brown's cell and asked Brown why he was lying in bed when Evans had told him to report to work.  Brown repeated his contention that Evans had made a mistake.  In response, Evans held a can of pepper spray near Brown's face "in an intimidating manner."  (Tr. 18.)  Brown asked Evans not to spray him.  Evans ordered Brown to "cuff up," i.e., to get into position so that Evans could handcuff him.  Brown jumped from his upper-bunk bed, landing about a foot away from Evans.  As soon as Brown jumped, Evans sprayed him

---

[1] Correctional Officer Robert Dunson, who supervises inmates in the food service area, corroborated Brown's testimony that he worked the B shift and another man named Brown worked the A shift.  Dunson also testified that he disciplines inmates who report to work early unless they have a legitimate reason for their premature arrival.  To Dunson, an order from another correctional officer to report to work qualifies as a legitimate reason.

with the pepper spray. Evans and another correctional officer, Kent Foster, then wrestled Brown to the ground and cuffed him.

{¶ 5} Both Evans and Foster contradicted Brown's version of events. According to Evans, around 6:30 a.m. on July 7, 2011, he received a call "asking for Inmate Brown out of [cell] 153 to report to food service." (Tr. 86.) Brown was assigned to cell 153. Evans went to Brown's cell, opened it, turned on the light, and ordered Brown to get dressed. Brown said that he did not have any clothes ready. Evans went back to the correctional officers' desk. From the desk, Evans saw Brown climb out of bed, turn off the light, and climb back into bed. Evans returned to Brown's cell, turned on the light, and repeatedly ordered Brown to get up, get dressed, and go to work. Brown then exited his cell, walked to the laundry room, found it locked, and went back to bed. Evans followed Brown to his cell and again told him to get up, get dressed, and go to work. When Brown ignored him, Evans pulled out his can of pepper spray. Brown pulled a blanket over his head and said, "[I]f you spray me, that will be your biggest mistake." (Tr. 88.) Evans repeated his orders. Brown scooted down his bed toward where Evans was standing and said, "[I]f you spray me, you're going to regret it." (Tr. 89.) Brown then leaped out of his bunk at Evans, and Evans sprayed him with the pepper spray. The can of pepper spray broke, and pepper spray splashed both Brown and Evans. Foster pulled Brown off of Evans and cuffed him.

{¶ 6} Evans testified that, during their encounter, Brown did not tell him that he worked the B, or afternoon, shift. According to Evans, Brown only claimed that he was not scheduled to work that day. Evans also testified that, at some point during his third visit to Brown's cell, he ordered Brown to get out of bed and "cuff up."

{¶ 7} Although generally consistent, Foster's and Evans' versions of events differ slightly. According to Foster, on the morning of July 7, 2011, Evans woke Brown and told him to report to work. Brown got out of bed, walked to the laundry room, and upon trying the laundry room door, found it locked. Brown spoke briefly with Evans, then returned to his cell, turned off the light, and went back to bed. Evans went back to Brown's cell, turned on the light, and spoke with Brown. After Evans left to conduct rounds, Brown again turned off the light and went back to bed.

{¶ 8} Seeing that Brown was not complying with his orders, Evans asked Foster for his assistance. Evans then entered Brown's cell and spoke with Brown. Foster was about 20 feet away from the cell when he saw Evans get out his can of pepper spray. To Foster, that signaled an escalation of the situation, so he hurried the remaining distance to Brown's cell. When Foster reached the cell's doorway, he heard Brown say, "[I]f you spray me, that's going to be your last mistake." (Tr. 57.) Brown then rose up in his bunk, grabbed for the pepper spray can, and fell or jumped on Evans. Evans sprayed Brown with pepper spray as he was grabbing at the can. The can exploded and sprayed both Evans and Brown. Foster then cuffed Brown.

{¶ 9} In a decision dated April 2, 2013, the magistrate concluded that, regardless of the alleged mistake as to Brown's work schedule, Brown refused to obey Evans' orders. The magistrate also found that Evans reasonably perceived a threat of physical harm given Brown's recalcitrance, a remark that Evans could reasonably construe as threatening, and Brown's sudden jump from the upper bunk into Evans' immediate vicinity. Based on these circumstances, the magistrate concluded that Evans had the lawful authority to use reasonable force to control Brown, secure Brown's compliance with orders, and defend himself. Additionally, the magistrate found that Evans' use of pepper spray was reasonable, not excessive. The magistrate recommended that the trial court find in DRC's favor and determine that Evans was entitled to immunity.

{¶ 10} Upon Brown's motion, the trial court extended the time for filing objections to the magistrate's decision to May 31, 2013. Brown's attorney timely filed his objections. On June 19, 2013, Brown's attorney filed a motion requesting that the trial court allow the filing of supplemental objections that Brown, himself, had drafted.

{¶ 11} In a judgment dated August 16, 2013, the trial court denied Brown leave to file the supplemental objections. The trial court reviewed the timely objections, overruled them, and adopted the magistrate's decision.

{¶ 12} Brown now appeals the August 16, 2013 judgment and assigns the following errors:

> **ASSIGNMENT OF ERROR NO. 1.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN FINDING PLAINTIFF-APPELLANT ACTED UNREASONABLY IN NOT REPORTING TO THE**

**KITCHEN, WHEN IT WAS FIRMLY ESTABLISHED BY ROBERT DUNSON THAT APPELLANT CARLANDUS BROWN DID NOT WORK THE MORNING SHIFT.**

**ASSIGNMENT OF ERROR NO. 2.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN FAILING TO FIND C.O. EVANS FAILED TO FOLLOW THE ACCEPTED PROCEDURE IN ENTERING APPELLANT BROWN'S CELL WHERE THE SPACE WAS CONFINED.**

**ASSIGNMENT OF ERROR NO. 3.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN FAILING TO FIND OR CONSIDER THAT NO ONE CALLED MR. DUNSON WHO SUPERVISED KITCHEN WORKERS TO CHECK THE SCHEDULE WHEN THERE WAS SUFFICIENT TIME TO CHECK AND THAT MR. DUNSON DID NOT ORDER APPELLANT BROWN TO REPORT TO THE KITCHEN, RESULTING IN EXCESSIVE USE OF FORCE.**

**ASSIGNMENT OF ERROR NO. 4.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN FINDING APPELLANT BROWN'S CONDUCT WAS THREATENING TO C.O. EVANS, WHEN BROWN'S ONLY ACTION WAS TO WARN FOSTER NOT TO SPRAY HIM WITH MACE AND TO FOLLOW AN ORDER TO JUMP DOWN.**

**ASSIGNMENT OF ERROR NO. 5.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN RULING C.O. EVANS' ACTION IN SPRAYING APPELLANT BROWN WITH MACE CONFORMS TO USE OF FORCE REGULATIONS 5120-9-02 AND 5120-9-03.**

**ASSIGNMENT OF ERROR NO. 6.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN NOT CONSIDERING THAT AN INMATE OF THE SAME NAME (BROWN) LIVED IN THE BLOCK AND WORKED THE MORNING SHIFT, WHO FOSTER AND EVANS KNEW LEFT FOR WORK, SUPPLYING CREDENCE TO APPELLANT BROWN'S CLAIM HE WAS NOT ASSIGNED THE MORNING SHIFT.**

**ASSIGNMENT OF ERROR NO. 7.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN CONCLUDING APPELLANT BROWN WAS AWARE HE WOULD NOT BE TICKETED FOR OUT OF PLACE IF HE SHOWED UP FOR WORK IN THE KITCHEN.**

**ASSIGNMENT OF ERROR NO. 8.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN PERMITTING C.O. FOSTER TO STATE HIS OPINION THAT C.O. EVANS' CONDUCT CONFORMED TO THE REGULATION REGARDING USE OF FORCE.**

**ASSIGNMENT OF ERROR NO. 9.) THE TRIAL COURT AND THE MAGISTRATE ERRED IN ACCEPTING C.O. EVANS' CLAIM HE RECEIVED A PHONE CALL REQUESTING THAT APPELLANT CARLANDUS BROWN REPORT TO THE KITCHEN WHEN NO ONE CORROBORATED THIS AND MR. DUNSON RECALLED NO TELEPHONE CALL ABOUT CARLANDUS BROWN.**

**ASSIGNMENT OF ERROR NO. 10.) THE TRIAL COURT'S AND THE MAGISTRATE'S DECISIONS ARE CONTRARY TO LAW AND NOT SUPPORTED BY THE EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 11.) THE TRIAL COURT'S DECISION AND THE MAGISTRATE'S DECISION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**ASSIGNMENT OF ERROR NO. 12.) THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRUING PLAINTIFF-APPELLANT'S MOTION TO FILE SUPPLEMENTAL OBJECTIONS WITH SUPPORTING MEMORANDUM.**

{¶ 13} Before addressing Brown's assignments of error, we must set forth the applicable law. Allegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence. To prove a claim for battery, a plaintiff must demonstrate that the defendant "act[ed] intending to cause a harmful or offensive contact, and * * * a harmful contact result[ed]." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988). A defendant may defeat a battery claim by establishing a privilege or

justification defense. *Id.*; *Wheeler v. Hagood*, 12th Dist. No. CA95-03-025 (Sept. 11, 1995). However, "the use of excessive force by one privileged to use force on another may constitute battery." *Shadler v. Double D. Ventures, Inc.*, 6th Dist. No. L-03-1278, 2004-Ohio-4802, ¶ 19.

{¶ 14} To prove actionable negligence, a plaintiff must show the existence of a duty, breach of that duty, and injury proximately caused by the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). The state owes a duty to inmates to reasonably care for the inmates' health, care, and well-being. *Miller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-12, 2012-Ohio-3382, ¶ 12; *Ensman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-592, 2006-Ohio-6788, ¶ 5.

{¶ 15} The use of force is an obvious reality of prison life. *Miller* at ¶ 13; *Ensman* at ¶ 23; *accord Jodrey v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-477, 2013-Ohio-289, ¶ 17 ("The use of force is sometimes necessary to control inmates."). Ohio Adm.Code 5120-9-01 provides guidance for determining whether a correctional officer's use of force is privileged and/or reasonable. Under Ohio Adm.Code 5120-9-01(B)(1), "force" means "the exertion or application of a physical compulsion or constraint." Correctional officers considering the use of force must evaluate the need to use force based on the circumstances as known and perceived at the time it is considered. Ohio Adm.Code 5120-9-01(C)(1). Ohio Adm.Code 5120-9-01(C)(2) identifies six general circumstances under which a correctional officer may use less-than-deadly force against an inmate. Those circumstances include:

> (a) Self-defense from physical attack or threat of physical harm.
>
> (b) Defense of another from physical attack or threat of physical attack.
>
> (c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.
>
> (d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance.
>
> (e) Prevention of an escape or apprehension of an escapee; or

(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm.

*Id.*

{¶ 16} In addition to addressing the circumstances under which a correctional officer may use force, Ohio Adm.Code 5120-9-01 also provides direction regarding the extent and amount of the force an officer should use. Pursuant to Ohio Adm.Code 5120-9-01(C)(1)(a), correctional officers "may use force only to the extent deemed necessary to control the situation." Additionally, correctional officers "should attempt to use only the amount of force reasonably necessary under the circumstances to control the situation and shall attempt to minimize physical injury." Ohio Adm.Code 5120-9-01(C)(1)(b). "Excessive force" means "an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident." Ohio Adm.Code 5120-9-01(B)(3).

{¶ 17} We will begin our analysis with Brown's tenth and eleventh assignments of error, by which he argues that the trial court's judgment is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree with both arguments.

{¶ 18} In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. "Sufficiency" is " ' "a term of art meaning that legal standard which is applied to determine whether * * * the evidence is legally sufficient to support the [judgment] as a matter of law." ' " *Id.* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). In reviewing the sufficiency of the evidence in a civil case, a court of appeals must determine whether the judgment could reasonably be reached from the evidence. *Warden v. Ohio Dept. of Natural Resources*, 10th Dist. No. 13AP-137, 2014-Ohio-35, ¶ 46.

{¶ 19} Even if sufficient evidence sustains a judgment, a court of appeals may nevertheless conclude that the judgment is against the manifest weight of the evidence. *Eastley* at ¶ 12. " 'Weight of the evidence concerns "the inclination of the greater amount

of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' "  (Emphasis omitted.) *Id.*, quoting *Thompkins* at 387, quoting *Black's* at 1594. Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley* at ¶ 20. In so applying the standard, the court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶ 20} Here, the trial court found that Evans sprayed Brown with pepper spray as Brown jumped from his upper-bunk bed. The trial court found the use of force authorized because Evans could reasonably perceive that force was necessary to control Brown, secure Brown's compliance with his orders, and defend himself. The trial court also found that the amount of force Evans used was not excessive given the situation. Because it found that Evans' actions were privileged and reasonable, the trial court refused Brown recovery for both battery and negligence.

{¶ 21} We find that sufficient evidence supports the trial court's decision that Evans could use force against Brown. Evans had repeatedly directed Brown to get up, get dressed, and report to work. Brown ignored these orders. Brown then made a remark that Evans could reasonably construe as threatening and jumped off his bed so as to land in Evans' immediate vicinity. These circumstances permitted Evans to use less-than-deadly force under Ohio Adm.Code 5120-9-01(C)(2)(a) and (c). Evans, therefore, was authorized to use the amount of force reasonably necessary to control the situation. Ohio Adm.Code 5120-9-01(C)(1)(b).

{¶ 22} We next must consider if the force Evans used exceeded the amount of force reasonably necessary to control Brown. Evans testified that when an inmate disobeys a direct order, a correctional officer may put the inmate "in an escort position." (Tr. 90.) However, that would have required Evans to climb onto Brown's bed, which he could not do safely. Evans, therefore, used his pepper spray, the next permissible level of force. As Foster testified, on the continuum of force that a correctional officer may use, using pepper spray is one of the lesser amounts of force. Foster also opined that Evans used a

reasonable amount of force in response to the situation.[2]  We conclude that this evidence supports the trial court's finding that Evans' use of force against Brown was not excessive.

{¶ 23} {23}  Having determined that sufficient evidence sustains the judgment, we turn to evaluating the weight of that evidence.  In arguing that the judgment is against the manifest weight of the evidence, Brown first asserts that this court should credit his testimony that he never said anything threatening to Evans over DRC's contradictory evidence.  We are not persuaded.  Both Evans and Foster recall Brown issuing a threat when he saw that Evans had pulled out his can of pepper spray.  According to Evans, Brown said, "[I]f you spray me, that will be your biggest mistake," as well as, "[I]f you spray me, you're going to regret it."  (Tr. 88-89.)  Foster recalls Brown saying, "[I]f you spray me, that's going to be your last mistake."  (Tr. 57.)  The trial court believed Evans' and Foster's testimony instead of Brown's testimony.  Given the presumption in favor of the finder of fact, we are not inclined to second-guess this credibility determination.

{¶ 24} Brown also denies that jumping from his bunk was a threatening move.  He claims that Evans intentionally positioned himself in the close quarters of his cell and ordered him out of bed, knowing that his descent from his bed would appear menacing and justify the use of pepper spray.  Under this version of events, Brown's actions did not threaten Evans.  Instead, they gratified Evans' intent to create an excuse to use force.

{¶ 25} The trial court did not ascribe a sinister motive to Evans.  Rather, the trial court found that Evans reasonably interpreted Brown's words and actions as a threat of physical harm.  We interpret the evidence as the trial court did.  Evans testified that he felt threatened by Brown.  We agree with the trial court that Evans' perception of a threat was reasonable.

{¶ 26} In sum, we conclude that both sufficient and competent, credible evidence supports the judgment.  Accordingly, we overrule Brown's tenth and eleventh assignments of error.

{¶ 27} Next, we will address the assignments of error by which Brown argues that the trial court should have found that Evans wrongly ordered Brown to report to work and wrongly failed to confirm Brown's work schedule when Brown claimed that a mistake had

---

[2] As we will explain below, we reject Brown's argument that the trial court should have excluded this evidence.

been made. These assignments of error include the first, third, sixth, and ninth assignments of error.

{¶ 28} Apparently, Brown believes that if Evans issued orders based on wrong information, i.e., Brown was scheduled to work the A shift, then Evans did not have any basis for using force to enforce his orders. We disagree with Brown's premise. A correctional officer may use less-than-deadly force to control an inmate who refuses to obey orders. Ohio Adm.Code 5120-9-01(C)(2)(c). Indisputably, Brown refused to obey Evans' direct orders. Evans, therefore, had the authority to use the force reasonably necessary to control Brown. Whether or not Brown was actually scheduled to work does not affect the validity of Evans' orders or excuse Brown's noncompliance. Evans, therefore, was justified in the use of force in these circumstances. Accordingly, we overrule Brown's first, third, sixth, and ninth assignments of error.

{¶ 29} By his second assignment of error, Brown argues that the trial court erred in failing to find that Evans did not follow "the accepted procedure" in entering Brown's cell. Brown, however, did not present any evidence regarding the accepted procedure applicable in the circumstances of this case. The only relevant testimony about this issue was the following colloquy with Foster:

> Q: * * * Are officers supposed to go into the cell after an inmate, or are they to direct him to come out of the cell and cuff him?
>
> A: It's not that we're not allowed in the cell. I mean, we can go into the cell anytime we want to.
>
> Q: But standard procedure, do you order them to come out and be cuffed up?
>
> A: Not that I'm aware of. I mean, if you specifically go over there just to cuff him up, I would -- myself, I guess I would ask him to come out.

(Tr. 51.) Thus, Foster merely testified that he, personally, would normally ask an inmate to exit his cell before handcuffing him. Foster denied that standard procedure required Evans to do the same.

{¶ 30} Brown also contends that, pursuant to Ohio Adm.Code 5120-9-01(C)(6), a supervisor should have removed him from his cell. According to Ohio Adm.Code 5120-9-01(C)(6), "[i]n the event of a cell extraction, work stoppage, disturbance or other situation in which staff can prepare for the use of force, such force shall be directed by the shift supervisor or other ranking official." Brown neither argued at trial nor adduced any evidence that Evans was performing a cell extraction and, thus, that Ohio Adm.Code 5120-9-01(C)(6) applied to these circumstances.

{¶ 31} Absent any evidence regarding the applicable accepted procedure, we cannot conclude that the trial court erred in not finding that Evans violated that procedure. Accordingly, we overrule Brown's second assignment of error.

{¶ 32} By Brown's fourth assignment of error, he argues that the trial court erred in finding that his conduct threatened Evans. We considered and rejected this argument in the context of addressing the eleventh assignment of error. Accordingly, we overrule Brown's fourth assignment of error.

{¶ 33} By Brown's fifth assignment of error, he argues that the trial court erred in finding that Evans' use of pepper spray against him conformed to Ohio Adm.Code 5120-9-02 and 5120-9-03. Although Brown's assignment of error cites Ohio Adm.Code 5120-9-02 and 5120-9-03, his argument focuses on Ohio Adm.Code 5120-9-01. We reviewed Evans' actions in light of Ohio Adm.Code 5120-9-01 when addressing the second and tenth assignments of error. In sum, we agree with the trial court that Evans complied with the applicable provisions of Ohio Adm.Code 5120-9-01. Accordingly, we overrule Brown's fifth assignment of error.

{¶ 34} By his seventh assignment of error, Brown argues that the trial court erred in finding that he knew that he would not receive discipline if he reported to work early on Evans' order. The trial court did not make the factual finding that Brown now challenges. Accordingly, we overrule Brown's seventh assignment of error.

{¶ 35} By his eighth assignment of error, Brown argues that the trial court erred in admitting Foster's opinion testimony into evidence. We disagree.

{¶ 36} The admission of evidence is within the discretion of the trial court. *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38. Thus, a court of appeals will only reverse a decision admitting or excluding evidence upon a showing of

an abuse of discretion. *Id.*; *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶ 22. A trial court abuses its discretion if its decision is unreasonable, arbitrary, or unconscionable. *Johnson* at ¶ 22; *Banford* at ¶ 38.

{¶ 37} Here, Brown objected to two opinions offered by Foster. Foster opined as follows:

> Q: Mr. Foster, do you think based on your experience, your 17 years, do you think the amount of force that Officer Evans used on July 7, 2011 was reasonable under the circumstances?
>
> A: Yes, sir.
>
> * * *
>
> Q: At any time do you think that Mr. Evans went outside of the training that is given to you guys by DRC?
>
> A: No, sir.

(Tr. 68, 70.)

{¶ 38} We cannot determine whether DRC offered this testimony as lay opinion or expert opinion. However, we need not decide whether Foster qualifies under Evid.R. 702 as an expert witness. A lay witness may express opinions regarding matters "of a technical nature * * * on a subject outside the realm of common knowledge" where the witness possesses sufficient experience or specialized knowledge that satisfies the requirement of Evid.R. 701 that the opinion be rationally based on the witness's perception and helpful in determining a fact in issue. *State v. McKee*, 91 Ohio St.3d 292, 297 (2001); *Wittensoldner v. Ohio Dept. of Transp.*, 10th Dist. No. 13AP-475, 2013-Ohio-5303, ¶ 15.

{¶ 39} Here, Foster completed the mandatory training for correctional officers and worked as a correctional officer at the Warren Correctional Institution for 17 years. He observed the final moments of Evans and Brown's confrontation, including Evans' use of pepper spray against Brown. Given Foster's education, experience, and firsthand knowledge, we conclude that the trial court did not abuse its discretion in allowing his opinion testimony. Accordingly, we overrule Brown's eighth assignment of error.

{¶ 40} By Brown's twelfth assignment of error, he argues that the trial court erred in denying his motion for leave to file his supplemental objections. We disagree.

{¶ 41} Pursuant to Civ.R. 53(D)(5), "[f]or good cause shown, the court shall allow a reasonable extension of time for a party to * * * file objections to a magistrate's decision." A trial court has discretion to rule upon procedural matters, and an appellate court will not reverse such rulings absent an abuse of discretion. *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, ¶ 16.

{¶ 42} Here, the trial court extended the deadline to file objections to the magistrate's April 2, 2013 decision to May 31, 2013. The trial court determined that this extension gave Brown ample opportunity to prepare and file objections, and thus, it denied Brown a further extension. We perceive no abuse of discretion in this determination. Accordingly, we overrule Brown's twelfth assignment of error.

{¶ 43} For the foregoing reasons, we overrule all of Brown's twelve assignments of error, and we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK and CONNOR, JJ., concur.

————————————