*[Cite as McDougald v. Ohio Dept. of Rehab. & Corr., 2021-Ohio-2407.]*

| | |
|---|---|
| JERONE MCDOUGALD | Case No. 2019-00950JD |
| Plaintiff | Magistrate Scott Sheets |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff Jerone McDougald (plaintiff) is an inmate in defendant's custody who resides at defendant's Toledo Correctional Institution (TOCI) in Toledo, Ohio. Plaintiff seeks damages for injuries he alleges were sustained when defendant's employee(s) used force on him on July 22, 2019. The case proceeded to trial via Zoom videoconference. In addition to plaintiff, correction officers Mark Poupard (Mr. Poupard) and Tashana Ford (Ms. Ford) and Nurse Hannah Krogel (Nurse Krogel) also testified. Exhibits admitted into evidence included a copy of the video of the incident as well as a copy of a packet of documents generated in connection with the incident and some of plaintiff's medical records. For the following reasons, the magistrate finds that plaintiff failed to prove his claims and recommends judgment in defendant's favor.

**Findings of Fact**

{¶2} On July 22, 2019, plaintiff was incarcerated at TOCI. TOCI is a maximum-security facility and houses only the highest security level inmates. On that day, plaintiff resided in TOCI's Transitional Programming Unit (TPU). The TPU houses TOCI's highest security inmates, inmates with rule violations who cannot be housed in the facility's general population. Plaintiff had a history of throwing bodily fluids, fecal matter and/or other types of fluids on TOCI's staff. Mr. Poupard was distributing food trays toinmates including plaintiff. Mr. Poupard arrived at plaintiff's cell and noticed plaintiff's cell door and window were covered in feces. Mr. Poupard informed plaintiff that he

needed to clean up the feces to receive his food tray, which is distributed through a cuff-port on the door. As plaintiff began to wipe down the cuff-port area, Mr. Poupard opened it to give plaintiff his tray of food. At this time, Mr. Poupard observed a cup in plaintiff's hand that Mr. Poupard believed plaintiff intended to use to throw feces or some other substance on him. Because of plaintiff's history and in apprehension of whatever might be in Mr. McDougald's cup as he stood behind his feces smeared door, Mr. Poupard deployed a short 2-3 second burst of oleoresin capsicum ("OC") spray. Mr. Poupard used a device known as a fogger, which disperses the OC spray in a wide, fog-like pattern. The fogger is used in the TPU area because it is effective when spraying through the cuff-port and into a cell, a situation during which precise aim is difficult.

{¶3} After plaintiff dropped the cup, Mr. Poupard ceased using OC spray. Another officer, Mr. Cleveland, then handcuffed plaintiff and he and Mr. Poupard escorted plaintiff to the nearest shower to decontaminate him after the OC spray. Plaintiff resisted Mr. Cleveland and Mr. Poupard as they escorted him to the shower, attempting to turn and walk in the other direction. Several additional corrections officers responded to the incident. While in the shower, plaintiff continued to resist and banged his head on the shower wall. No one struck plaintiff. After about a minute, Mr. Cleveland and several corrections officers escorted plaintiff out of the shower and to TOCI's medical unit while Mr. Poupard escorted another inmate out of the shower area. The very next day, plaintiff threw fecal matter on Mr. Poupard.

{¶4} Mr. Poupard testified to the above. The magistrate finds Mr. Poupard testified credibly. His answers were consistent, direct, and responsive. He spoke factually and frankly and appeared sincere. He did not evade any question or issue.

{¶5} In addition, exhibits admitted into evidence corroborated Mr. Poupard's testimony. A portion of plaintiff's discipline history indicates that plaintiff has thrown substances on corrections officers several times. The video depicts plaintiff's cell

window covered in a substance consistent in appearance with fecal matter. Though it does not offer a view inside plaintiff's cell, what the video does show is consistent with Mr. Poupard's testimony. It shows the incident ended quickly atter Mr. Poupard approached plaintiff's cell and shows plaintiff being escorted out of the cell and toward the shower area while plaintiff attempts to resist and walk away from Mr. Poupard and Mr. Cleveland. The video also shows plaintiff being escorted out of the shower area. In addition, Mr. Poupard and Mr. Cleveland completed use of force reports on the day of the incident which also corroborate Mr. Poupard's testimony. Finally, Ms. Ford, who was one of the officers that responded, corroborated Mr. Poupard's testimony in that she testified regarding plaintiff's continued resistance while in the shower and that no one struck plaintiff; she indicated plaintiff was "jumping around."

{¶6} Plaintiff's testimony contradicted some of the above facts. For instance, plaintiff indicated that unidentified corrections officers struck him in the shower, took issue with his discipline history and claimed that officers and medical staff made false statements in their reports. However, the magistrate finds that his testimony lacked credibility primarily because plaintiff testified evasively on cross-examination, often refusing to answer yes or no questions directly, and also because of plaintiff's demeanor while testifying. His testimony as a whole failed to address many of the relevant facts adequately and, at times, his testimony was inconsistent. For instance, when being asked about his disciplinary history, plaintiff repeatedly testified that he had been accused of throwing things on officers and that discipline records reflect what they reflect and seemed to imply that some of the records' contents might not be true before eventually testifying "a lot" of the contents of the records were false. He later admitted to at least throwing water on officers. Further, he denied smearing feces on his door without offering any explanation for the substance seen on his cell window in the video. Later, he indicated he might not recall and/or that his mental health was to blame. Rather than focus on the facts of the incident, plaintiff repeatedly opined regarding

violations of institution policy.  Likewise, he continually pointed to what could not be seen on video while at the same time failing to offer clear and direct testimony on what could be seen on the video.  Finally, plaintiff offered no evidence which corroborated his version of events.

{¶7} Immediately after the incident, plaintiff was examined in TOCI's medical area.  Plaintiff experienced temporary burning and discomfort associated with the effects of pepper spray.  He also had abrasions on his head and face, but he sustained no permanent injury from the use of force.  He paid nothing for medical care and his temporary injuries required no further treatment.  Plaintiff testified to the effect the pepper spray had on him and parts of his medical records admitted into evidence established the remainder of these facts.  Plaintiff presented no evidence of any amount paid for treatment.

**Conclusions of Law**

{¶8} To meet his burden at trial, plaintiff needed to prove his claims by a preponderance of the evidence.  As stated in *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist. No. 06AP-713, 2007 Ohio 1942, 2007 Ohio App. Lexis 1762, ¶ 49: "[a] preponderance of the evidence is 'the greater weight of the evidence * * * [it] means evidence that is more probable, more persuasive, or of greater probative value."

{¶9} Plaintiff's complaint alleges unnecessary or excessive force and states claims for battery and/or negligence.  As stated in *Brown v. Dep't of Rehab. & Corr.*, 10th District No. 13AP-804, 2014-Ohio-1810, ¶¶ 13-14:

> To prove a claim for battery, a plaintiff must demonstrate that the defendant "act[ed] intending to cause a harmful or offensive contact, and * * * a harmful contact result[ed]."  A defendant may defeat a battery claim by establishing a privilege or justification defense.  However, "the use of excessive force by one privileged to use force on another may constitute battery."

> To prove actionable negligence, a plaintiff must show the existence of a duty, breach of that duty, and injury proximately caused by the breach. The state owes a duty to inmates to reasonably care for the inmates' health, care, and well-being.

As also stated in *Brown,* "Ohio Adm. Code 5120-9-01 provides guidance for determining whether a correctional officer's use of force is privileged and/or reasonable." *Id.* at 15.

{¶10} Ohio Adm. Code 5120-9-01(B)(1) defines force as "the exertion or application of a physical compulsion or constraint." Correctional officers "considering the use of force shall evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." Force may be used "only to the extent deemed necessary to control the situation." Ohio Adm. Code 5120-9-01(C)(1). Among other situations, corrections officers may use force in "[s]elf-defense from physical attack or threat of physical harm." Ohio Adm. Code 5120-9-01(C)(2)(a). Force may also be used "[w]hen necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders." Ohio Adm. Code 5120-9-01(C)(2)(c). Excessive force "exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident." Ohio Adm.Code 5120-9-01(B)(3).

**Decision**

{¶11} It must be remembered that "[t]he use of force is an obvious reality of prison life." *Brown,* 10th District No. 13AP-804, 2014-Ohio-1810 at ¶ 15. The greater weight of the evidence, in both quantity and quality, established that plaintiff had a history of throwing substances on officers. It also established that, on the day of the incident, plaintiff's celldoor was smeared with feces and that plaintiff had a cup in his hand held in a such a manner that Mr. Poupard reasonably perceived it to be a threat. He also reasonably feared that plaintiff may throw fecal matter or some other substance on him. This occurred after Mr. Poupard directed plaintiff to clean up the feces smeared on his cell door so that plaintiff could be given food. Mr. Poupard briefly sprayed plaintiff

with OC spray only to the extent necessary to force plaintiff to drop the cup before plaintiff was taken to the shower by Mr. Poupard and other corrections officers, during which time he resisted officers' efforts. Other than temporary discomfort resulting from the effects of OC spray and some minor abrasions, the incident resulted in no injury to plaintiff who received immediate medical attention.

{¶12} The magistrate finds that Mr. Poupard acted reasonably under the circumstances, did not violate the duty of reasonable care owed to inmates and that plaintiff's injuries, if any, were *de minimus*. The magistrate also finds that Mr. Poupard acted with both justification and privilege in applying force to plaintiff. Finally, the magistrate finds that none of the corrections officers used excessive force. Mr. Poupard reasonably perceived plaintiff as a threat to his safety and used force only to the extent necessary to counter the threat he perceived and to gain plaintiff's compliance. The other corrections officers applied virtually no force to plaintiff.

{¶13} Based on the foregoing, the magistrate finds plaintiff failed to prove his claims by a preponderance of the evidence and recommends judgment in defendant's favor.

{¶14} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

SCOTT SHEETS
Magistrate

**Filed May 17, 2021**
**Sent to S.C. Reporter 7/14/21**