[Cite as *Cook v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-562.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| JOSHUA D. COOK | Case No. 2022-00334JD |
| Plaintiff | Magistrate Scott Sheets |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in defendant's custody, alleges that a corrections officer employed by defendant, Obiaku Ojiako (Ojiako), used excessive force on him on February 28, 2022. The court previously granted defendant summary judgment on plaintiff's spoliation claim but found that genuine issues of material fact precluded summary judgment on plaintiff's negligence and battery claims. Trial took place remotely. In addition to plaintiff, Miracle Thurman, Stephanie Kingery (Kingery), Kyle Zimmerman (Zimmerman), Darryl Hankins (Hankins), Courtney Dean, Tony Detty, and Ojiako, all employes of defendant, testified at trial. In addition, the affidavit of inmate Samuel Castle was admitted into evidence in lieu of live testimony after Mr. Castle appeared but refused to testify. Further, pictures of plaintiff's wrists and a packet of documentation related to defendant's investigation and handling of the incident were also admitted into evidence.[1] For the following reasons, the magistrate recommends judgment in defendant's favor.

**Findings of Fact**

{¶2} The magistrate makes the following factual findings based on the evidence presented at trial and cites only the evidence he found most relevant and compelling. On February 28, 2022, plaintiff was incarcerated at defendant's Pickaway Correctional

---

[1] The Castle affidavit and the pictures of plaintiff's wrists were marked as plaintiff's exhibits A and B-1 respectively. The incident report was admitted into evidence as defendant's exhibit A.

Institution (PCI). Ojiako worked at PCI that day in plaintiff's unit. Around 6:30-7:00 a.m., Plaintiff approached Ojiako and asked to be let out of the unit. Ojiako refused plaintiff's initial request and ordered him to depart from the area near her desk. Though they differed on the exact time that plaintiff first approached her, both plaintiff and Ojiako testified to the above.

{¶3} As Ojiako testified, the officer's desk at which she sat that day is surrounded by a yellow line on the floor that says "do not cross." Nevertheless, and despite Ojiako's order to leave the officer's desk area, plaintiff returned to the area several times and continued to insist that he should be let out of the unit. During his last trip to Ojiako's desk, plaintiff asserted that he had a pass to be let out of the unit. However, plaintiff could not locate the pass and did not have it with him on February 28, 2022. At some point during this last interaction, plaintiff cursed at Ojiako and called her "fucking retarded" in front of other inmates. Both plaintiff and Ojiako testified to the above. Plaintiff admitted that he called Ojiako "fucking retarded" and that he disobeyed her direct order(s) to depart the area near her desk.

{¶4} Ojiako then ordered plaintiff to get on the wall, at which point she handcuffed him. Ojiako had previously been trained in the use of handcuffs. Ojiako called other corrections officers in the yard, one of whom came and escorted plaintiff out of the area. Plaintiff and Ojiako testified to the above.

{¶5} Plaintiff was never left unattended and it took about 15 minutes before he was escorted out of the area. Ojiako testified to the above. Though plaintiff testified that he remained handcuffed for 30 minutes or more, was left unattended, and that other inmates filmed him and posted it to Tik Tok, the magistrate did not find this testimony credible.

{¶6} After being removed from the area, plaintiff apologized for his actions. Zimmerman removed the handcuffs with a handcuff key and noticed no physical injuries that required medical attention. Zimmerman testified to the above.

{¶7} In addition, plaintiff interacted with several other employees of defendant after being removed from the housing area and while the handcuffs were being removed. None of these employees referred plaintiff for medical attention. Plaintiff testified to the events that transpired after he was handcuffed and removed from the housing unit.

{¶8} Nonetheless, the handcuffs did leave marks on plaintiff's wrists, as depicted in plaintiff's exhibit B-1. Moreover, per plaintiff's testimony, the incident also caused him to cry.

{¶9} However, plaintiff talked to Kingery, a social worker at PCI, shortly after the incident. Though plaintiff was visibly upset and had been diagnosed with PTSD and other mental health conditions prior to February 28, 2022, Kingery could not attribute plaintiff's mental health conditions or any heightened anxiety to the incident. Kingery had not seen plaintiff in almost a year at the time of trial. Kingery testified to these facts.

{¶10} Plaintiff sought and received medical attention on March 2, March 4, and March 24, 2022. On March 2, 2022, Plaintiff complained of tenderness and swelling. Conservative treatment including a compression bandage, Tylenol, ice, and rest were provided and/or recommended. (Exhibit A, p. 7.) On March 4, 2022, plaintiff saw Hankins, a nurse practitioner at PCI, complaining of numbness. Hankins did not diagnose plaintiff with any traumatic injury and noted no deformity, swelling or marks. Hankins instead diagnosed plaintiff with Wartenberg's syndrome, a clinical diagnosis based on the symptoms plaintiff relayed. Wartenberg's syndrome is a compression of the radial nerve that causes temporary numbness and often results from being handcuffed. It is "self-limiting," meaning that it resolves on its own. Tylenol, rest, and massage were advised. *Id.* p. 13-14. On March 24, 2022, Plaintiff again saw Hankins, complaining of numbness. Hankins again recommended conservative treatment. *Id.* at p. 17-18. In addition to the medical records in exhibit A, Hankins testified about plaintiff's treatment and explained Wartenberg's syndrome.

{¶11} Despite plaintiff's testimony to the contrary, the magistrate finds that plaintiff's February 28, 2022 handcuffing did not result in any permanent or continuing injury. Plaintiff presented no expert testimony. In addition, the records and Hankins' testimony establish that plaintiff suffered minor physical injuries that were incidental to handcuffing and self-limiting. The marks on plaintiff's wrists depicted in exhibit B-1 were gone when Hankins saw plaintiff on March 4, 2022. Moreover, as noted, Kingery testified that she could not attribute any mental health condition to plaintiff's handcuffing. The magistrate also observed plaintiff during trial. He manipulated papers, tapped and twiddled his

fingers, and otherwise used his hands and wrists without issue.  Finally, plaintiff presented no evidence of current or recent treatment or the need for future treatment.

**Conclusions of Law**

{¶12} To meet his burden at trial, plaintiff needed to prove his claims by a preponderance of the evidence.  "A preponderance of the evidence is 'the greater weight of the evidence * * * [which] means evidence that is more probable, more persuasive, or of greater probative value.'"  *Brothers v. Morrone-O'Keefe Dev. Co., LLC,* 10th Dist. Franklin No. 06AP-713, 2007-Ohio-1942, 2007 Ohio App. LEXIS 1762, ¶ 49.

{¶13} During a civil trial, the trier of fact determines the weight to be accorded to the evidence as well as the credibility of witnesses.  *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The magistrate is the trier-of-fact in this case and must give the weight he deems appropriate to the evidence presented.  The magistrate is free to believe all, part, or none of the testimony of any witness.  *See State v. Green,* 10th Dist. Franklin No. 03AP-813, 2004-Ohio-3697, ¶ 24.

{¶14} Plaintiff's complaint alleges unnecessary and/or excessive force and states claims for battery and/or negligence.  As stated in *Brown v. Dep't of Rehab. & Corr.*, 10th District No. 13AP-804, 2014-Ohio-1810, ¶¶ 13-14:

> To prove a claim for battery, a plaintiff must demonstrate that the defendant "act[ed] intending to cause a harmful or offensive contact, and * * * a harmful contact result[ed]."  A defendant may defeat a battery claim by establishing a privilege or justification defense.  However, "the use of excessive force by one privileged to use force on another may constitute battery."
>
> To prove actionable negligence, a plaintiff must show the existence of a duty, breach of that duty, and injury proximately caused by the breach.  The state owes a duty to inmates to reasonably care for the inmates' health, care, and well-being.

{¶15} Ohio Adm. Code 5120-9-01(B)(1) defines force as "the exertion or application of a physical compulsion or constraint."  As stated in *Brown,* "Ohio Adm. Code 5120-9-01 provides guidance for determining whether a correctional officer's use of force

is privileged and/or reasonable." *Id.* at 15. Correctional officers "considering the use of force shall evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." Force may be used "only to the extent deemed necessary to control the situation." Ohio Adm. Code 5120-9-01(C)(1). Of note, corrections officers may use force "[w]hen necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders." Corrections officers may also use force "to stop an inmate from destroying property or engaging in a riot or other disturbance" and "to stop or prevent self-inflicted harm." Ohio Adm. Code 5120-9-01(C)(2)(c-d);(f). Excessive force "exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident." Ohio Adm.Code 5120-9-01(B)(3). It must be remembered that "[t]he use of force is an obvious reality of prison life." *Brown,* 10th District No. 13AP-804, 2014-Ohio-1810 at ¶ 15.

**Decision**

{¶16} The magistrate finds that plaintiff failed to prove his claims by a preponderance of the evidence. Instead, the evidence presented at trial established that Ojiako acted both reasonably and with privilege when she handcuffed plaintiff on February 28, 2022. The evidence also established that any injuries plaintiff sustained were minor.

{¶17} By plaintiff's own admission, he cursed at Ojiako and disrespected her in front of other inmates after he refused to obey her order(s) to depart the desk area and/or to wait to be let out of the unit. In addition to plaintiff's admission that he disobeyed Ojiako's order(s), his behavior on the morning of February 28, 2022 created a disturbance that Ojiako had to address. Thus, Ojiako's act of handcuffing plaintiff was consistent with the circumstances under which force may be used per Ohio Adm. Code 5120-9-01(C)(2). Other than placing Plaintiff in handcuffs, Officer Ojiako employed no other means of physical coercion or constraint. Her conduct involved the minimal application of physical coercion and control necessary to gain plaintiff's compliance after he became unruly and refused to obey her order(s). Under these circumstances, the magistrate finds that Officer Ojiako acted with privilege and did not use excessive force in handcuffing Plaintiff on February 28, 2022. As such, plaintiff's battery claim fails.

{¶18} For these same reasons, plaintiff's negligence claim also fails. Ojiako acted reasonably under the circumstances and did not breach any duty to plaintiff when she used the minimum amount of force necessary to control the situation. Further, Ojiako called for assistance and the handcuffs were removed within a reasonable time. The evidence also established that any injuries plaintiff suffered, consisting of marks which resolved within days and temporary numbness, were minor and incidental to the application of handcuffs. They did not result from any excessive or unreasonable application of force or from the improper application of handcuffs. There is simply no basis upon which the magistrate can find that Ojiako acted negligently.

{¶19} Based on the foregoing, the magistrate finds plaintiff failed to prove his claims by a preponderance of the evidence and recommends judgment in defendant's favor.

{¶20} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

SCOTT SHEETS
Magistrate

**Filed January 12, 2024**
**Sent to S.C. Reporter 2/15/24**