[Cite as *Jackson v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-5504.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| CLIFFORD D. JACKSON, III | Case No. 2023-00396JD |
| Plaintiff | Magistrate Gary Peterson |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff, an inmate in the custody and control of defendant, the Ohio Department of Rehabilitation and Correction (ODRC), brought this action alleging that defendant's employees used excessive force on him and that the medical treatment he received following the use of force was inadequate or substandard. The case was referred to the undersigned magistrate and proceeded to trial.

{¶2} Plaintiff testified that on June 24, 2021, defendant's corrections officers at the Ohio State Penitentiary (OSP), approached his cell and ordered him out of his cell to be transferred to the Southern Ohio Correctional Facility (SOCF). Plaintiff explained to the corrections officers that he was not to be transferred to SOCF and refused to exit his cell for the transfer. A negotiator identified as T. Evans attempted to convince plaintiff to exit his cell; however, plaintiff refused all orders to exit his cell. As a result, the corrections officers executed a planned cell extraction of plaintiff. Plaintiff testified that during the cell extraction, he suffered injuries to his body as a result of the use of force.

{¶3} Following the use of force, plaintiff received periodic medical treatment for his wounds. Plaintiff testified, however, that his wounds did not heal properly and that he continues to experience pain associated with the use of force. Plaintiff related that his wounds were not properly bandaged and that doctors removed dead skin so that the wounds could heal properly. Plaintiff added that he believed poor blood circulation

contributed to his wounds not healing properly and that he was not provided pain medication. Finally, plaintiff testified that a deputy warden eventually informed him that he was not to be transferred to SOFC at that time. Plaintiff offered exhibits 1-8, which are photographs of injuries, exhibit 9, which is an incident report noting what appears to be abrasions to plaintiff's arms, and exhibit 10, which is a medical record regarding wound care, wherein it is noted that plaintiff's abdominal dressings are not done properly and that he has had similar wounds in the past. No other witnesses testified, and no other exhibits were entered into evidence.

{¶4} After plaintiff completed his presentation of evidence, defendant moved for dismissal of plaintiff's claims under Civ.R. 41(B)(2). As explained below, the motion was well-taken.

{¶5} Civ.R. 41(B)(2) states, in part:

{¶6} "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. . . ."

**Inadequate Medical Care**

{¶7} "In order to sustain an action for negligence, a plaintiff must show the existence of a duty owing from the defendant to the plaintiff or injured party, a breach of that duty, and that the breach was the proximate cause of resulting damages." *Sparre v. Ohio Dept. of Transp.*, 2013-Ohio-4153, ¶ 9 (10th Dist.).

{¶8} "Under Ohio statutory law, a 'medical claim' is defined in part as ""any claim that is asserted in any civil action against a physician, . . . hospital, . . . or residential facility, . . . and that arises out of the medical diagnosis, care, or treatment of any person.'"" *Skaggs v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-2034, ¶ 29 (10th Dist.), quoting *Foy v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-1065, ¶ 15 (10th Dist.), quoting R.C. 2305.113(E)(3). "[A]n inmate's claim against ODRC based on the negligent acts or omissions of ODRC's medical staff sound in ordinary negligence, rather than medical

malpractice, where the claimed negligence occurs in a medical context but does not arise in the course of medical diagnosis, care, or treatment of the inmate." *Gibson v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4955, ¶ 15 (10th Dist.), citing *Foy* at ¶ 23; *see also* R.C. 2305.113(E)(3). However, plaintiff's complaint regarding the quality of the medical care he received is "uniquely within the purview of a medical expert and outside the general knowledge of a layperson." *See Gibson* at ¶ 18 ("Medical skill and judgment was necessary to determine the proper course of treatment . . . and determine whether any medication should have been prescribed . . . ."); *see also Kester v. Brakel*, 2007-Ohio-495, ¶ 26 (10th Dist.).

{¶9} In Ohio, "'an inmate is under no different burden than any other plaintiff in a medical malpractice claim.'" *Gibson* at ¶ 10, quoting *Nicely v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-4386, ¶ 9 (10th Dist.). Prevailing on a claim for medical malpractice requires that "a plaintiff must prove: (1) the existence of a standard of care within the medical community; (2) the defendant's breach of that standard; and (3) proximate cause between the medical evidence and the plaintiff's injuries." *Hernandez v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-8646, ¶ 13 (10th Dist.), citing *Adams v. Kurz*, 2010-Ohio-2776, ¶ 11 (10th Dist.). The appropriate standard of care is proven by expert testimony that explains "what a medical professional or ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances." *Schwind v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-3995, ¶ 17 (10th Dist.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 130 (1976). Failure to provide expert testimony establishing the standard of care is "fatal to the presentation of a prima facie case of medical malpractice." *Id.*, citing *Gibson* at ¶ 10.

{¶10} Because plaintiff testified that he received inadequate medical care that resulted in his wounds not healing properly for several years, requiring subsequent medical procedures to repair past medical mistakes, plaintiff was required to establish the standard of care and proximate cause of any such damage with expert medical testimony. No such testimony was presented. The mechanisms of plaintiff's wounds healing and any scar tissue that may have arisen, along with poor blood circulation and infections and any proximate cause thereof are internal, elusive, and not sufficiently observable, understandable, or comprehensible to a layperson. *See Corwin v. St. Anthony Med. Ctr.*,

80 Ohio App.3d 836, 840-841 (10th Dist. 1992) ("[W]here an injury is not obvious, there must be expert evidence as to the damage sustained, the probability of future pain and suffering or the permanency of the injury."). While plaintiff argues that the medical records establish a causal connection, the only medical record submitted does not establish any breach of the standard of care or proximate cause of any injuries. Moreover, the law is clear that expert testimony is required. *See Davie v. Nationwide Mut. Ins. Co.*, 2015-Ohio-104, ¶ 9 (8th Dist.) (expert testimony must be expressed to a degree of medical certainty and medical records generally do not meet that standard).

{¶11} Given the absence of expert testimony in this action, plaintiff has shown no right to relief regarding his medical claim. Accordingly, it is recommended that plaintiff's medical claim be dismissed pursuant to Civ.R. 41(B)(2).

**Use of Force**

{¶12} "Allegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence." *Brown v. Dept. of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 13 (10th Dist.). "To prove battery, the plaintiff must prove that the intentional contact by the defendant was harmful or offensive. . . . Ohio courts have held that, in a civil action for assault and battery, the defendant has the burden of proving a defense of justification, such as the exercise of lawful authority." *Miller v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-3382, ¶ 11 (10th Dist.). "A defendant may defeat a battery claim by establishing a privilege or justification defense." *Brown* at ¶ 13. "However, 'the use of excessive force by one privileged to use force on another may constitute battery.'" *Russell v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4695, ¶ 11 (10th Dist.), quoting *Shadler v. Double D. Ventures, Inc.*, 2004-Ohio-4802, ¶ 19 (6th Dist.).

{¶13} "To prevail on a negligence claim, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Woodbridge v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-891, ¶ 30 (10th Dist.). "Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being." *Ensman v. Ohio Dept. of Rehab. & Corr.*, 2006-Ohio-6788, ¶ 5 (10th Dist.).

{¶14} "The use of force is sometimes necessary to control inmates." *Jodrey v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-289, ¶ 17 (10th Dist.). "Correctional officers

considering the use of force must evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." *Brown,* 2014-Ohio-1810, at ¶ 15, citing Ohio Adm.Code 5120-9-01(C). "[T]he precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Ensman* at ¶ 23. "In Ohio Adm.Code 5120-9-01, the Ohio Administrative Code sets forth the circumstances under which correctional officers are authorized to use force against an inmate." *Id.* at ¶ 6.

{¶15} Ohio Adm.Code 5120-9-01 provides, in part:

(C) Guidelines regarding the use of force. . . .

. . .

(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

(a) Self-defense from physical attack or threat of physical harm.

(b) Defense of another from physical attack or threat of physical attack.

(c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.

(d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance.

(e) Prevention of an escape or apprehension of an escapee; or

(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm.

{¶16} "Pursuant to Ohio Adm.Code 5120-9-01(C)(1)(a), correctional officers 'may use force only to the extent deemed necessary to control the situation.'" *Brown,* 2014-Ohio-1810, at ¶ 16. "Additionally, correctional officers 'should attempt to use only the amount of force reasonably necessary under the circumstances to control the situation and shall attempt to minimize physical injury.'" *Id.*, quoting Ohio Adm.Code 5120-9-01(C)(1)(b). "'Excessive force' means 'an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which

reasonably appears to be necessary under all the circumstances surrounding the incident.'" *Russell*, 2019-Ohio-4695, at ¶ 14, quoting Ohio Adm.Code 5120-9-01(B)(3).

{¶17} Here, there is no dispute that plaintiff refused direct orders to exit his cell and prepare for a transfer to SOCF. Accordingly, under the guidelines set forth above, corrections officers may use force when necessary to control or subdue an inmate who refuses to obey direct orders.

{¶18} Plaintiff argues that because the order was given in error, that he was justified in refusing to exit his cell and submit to a transfer to SOCF. However, the 10th District Court of Appeals has previously addressed such an argument. *Brown v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 28 (10th Dist.). In *Brown*, the plaintiff refused an order to report for a work shift, apparently believing that if the order was based on wrong information, then the corrections officer did not have any basis for using force to enforce the order. *Id.* The court in *Brown* rejected that premise noting that a corrections officer may use less-than-deadly force to control an inmate who refused to obey a direct order. *Id.* In *Brown,* like here, the plaintiff indisputably refused a direct order. *Id.* The court then went on to note that "[w]hether or not Brown was actually scheduled to work does not affect the validity of [the corrections officer's] orders or excuse Brown's noncompliance. [The corrections officer] was, therefore, justified in the use of force in these circumstances." *Id.*

{¶19} Here, plaintiff likewise refused direct orders that he believed were based on wrong information, i.e., that he should not be transferred to SOCF. Whether or not plaintiff was not to be transferred to SOCF does not affect the validity of the corrections officers' direct orders. In short, an inmate does not have the discretion to refuse a direct order even when the inmate believes that the order was based on incorrect information. *Id.* Furthermore, there was no evidence that the force used was excessive or unreasonable under the circumstances. Therefore, the only reasonable conclusion is that the corrections officers were justified in using force during the planned cell extraction because of plaintiff's refusal to comply with direct orders.

{¶20} Accordingly, it is recommended that plaintiff's claim arising out of the use of force be dismissed pursuant to Civ.R. 41(B)(2).

{¶21} Based upon the foregoing, it is recommended that plaintiff's claims be dismissed pursuant to Civ.R. 41(B)(2).

{¶22} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

GARY PETERSON
Magistrate

**Filed November 21, 2025**
**Sent to S.C. Reporter 12/11/25**